Doerfer, J.
Plaintiff Highlands Insurance Company (“Highlands”) has moved for partial reconsideration of the denial of its April 20, 1993 motion for summary judgment. An October 8, 1993 order of this court denied summary judgment contingent on defendant Aerovox Corporation (“Aerovox”) submitting further evidence. The Motion for Reconsideration was filed by Highlands on December 7, 1993. Aerovox filed a Supplemental Memorandum in Opposition to Highlands Motion for Reconsideration on January 6, 1994. Highlands filed a Reply to Aerovox’s Supplemental Memorandum in Opposition in Highlands Motion for Reconsideration on January 28, 1994. Aerovox filed a Motion to Submit Surreply to Highlands Reply and a Memorandum of Surreply on February 8, 1994.
BACKGROUND
The facts in this case are briefly summarized here. Aerovox is a manufacturer of electrical capacitors at a plant in New Bedford. Highlands provided excess insurance coverage for Aerovox from March 1, 1980 to March 1, 1981. The policy provided in relevant part:
Coverage. The Company hereby agrees to indemnify the Insured against such ultimate net loss in excess of the insured’s primary limit as the Insured sustains by reason of liability, imposed upon the Insured by law or assumed by the Insured under contract, for damages because of personal injury or property damage to which this policy applies caused by each occurrence happening anywhere in the world.
The property damage is “injury to or destruction of tangible property.” An “occurrence” is defined as “an accident, including injurious exposure to conditions, which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the Insured.” Obligated coverage is not available for “property damage arising out of the discharge, dispersal, release, or escape of various pollutants, but the exclusion does not apply if such discharge is ‘sudden and accidental.’ ” The “sudden and accidental language” is typical of such insurance policies.
The site of Aerovox’s operations was formerly a waste reclamation facility known as the Re-Solve site. A fire occurred at the site in 1958, and it is possible that there was release of hazardous materials including Dense Nonaqueous Phase Liquids (DNAPLs). Sources of DNAPLs include PCBs, trichloroethylene and tetrachloroethylene. The nature of DNAPLs is such that migration may continue to cause ongoing property damage long after their initial release. While it appears that the Re-Solve site routinely handled materials such as PCBs and trichloroethylene, Aer-ovox claims that it has never used PCBs in its operations.
In May 1983, the Environmental Protection Agency (EPA) alleged that Aerovox was a generator of waste at the site. Aerovox entered into a consent decree under which it was forced to pay damages and is now seeking indemnification from Highlands on the grounds that the source of the pollution was the DNAPLs released in the 1958 fire and that said fire was “sudden and accidental." Aerovox argues that such a finding should except the occurrence from the pollution exclusion clause of the insurance policy.
This Court denied summary judgment to Highlands on October 8, 1993 contingent on Aerovox producing evidence of a causal link between the fire and the pollution for which it was held liable. Aerovox subsequently submitted three affidavits, including one from David Herer, an expert who has studied the site. *258 Herer’s affidavit claims that a causal link exists between the fire and the pollution for which Aerovox was charged. A second affidavit from Priscilla Meló, a former employee of Aerovox, states that trichloroeth-ylene was regularly sent to the Re-Solve site by Aerovox’s predecessor. Nonetheless Highlands argues that its Motion for Reconsideration should be granted based on the three specific arguments, each of which is addressed below.
DISCUSSION
Summary judgment is proper where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party establishes the absence of a triable issue, the opposing party must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Id. at 17. The power to reconsider an issue remains in the court until final judgment. Riley v. Presnell, 409 Mass. 239, 242 (1991), citing Peterson v. Hopson, 306 Mass. 597, 601 (1940). The denial of a summary judgment motion is not a final judgment and therefore a judge may reconsider or alter the prior decision. 409 Mass. at 239.
I. The “sudden and accidental” nature of the fire in the face of possible ongoing pollution activities.
The first issue involves whether the release of pollutants can be classified as sudden and accidental. The October 8, 1993 order of this court held that the pollution resulting from the 1958 fire would be sudden and accidental. The case law in Massachusetts supports this holding. In answering certified questions for the Federal District Court in Massachusetts, the Supreme Judicial Court held that “(t]he issue is whether . the release was sudden. The alternative is that it was gradual. If the release was abrupt and also accidental, there is coverage for an occurrence arising out of the discharge of pollutants.” Lumbermens Cas. Co. v. Belleville Industries, Inc., 407 Mass. 675, 680 (1990). The court went on to hold that “the abruptness of the commencement of the release or discharge of the pollutant is the crucial element,” id. at 681, but explicitly refused to address the situation of an initial accidental discharge that continued for an extended period, stating only that “as the discharge or release continues, at some point, presumably, it would likely cease to be accidental or sudden.” Id. at 681, n. 6. This last quotation is not applicable to the case at bar depending on how one classifies the situation at the Re-Solve site. In this case, according to the expert opinion of David Herer, the solvents that were released caused ongoing property damage due to their natural process of migration. Thus, according to the expert opinion, the migration, not the release, was what continued for an extended period of time.
Once the sudden and accidental nature of an event is established, the next concern is whether the existence of such an occurrence deserves coverage in the face of an ongoing pattern of pollution. Lumbermens Cas. Co. v. Belleville Industries, Inc., 938 F.2d 1423 (1st Cir. 1991), rejects the “microanalysis” involved in trying to determine whether the source of the pollution was caused by a “sudden and accidental” event where “the discharge consisted of long accumulated, unattended and unsegregated pollutants." Id. at 1427. Lumbermens, however, expressly refused to decide whether coverage would be due where, even though the operation was pollution-prone, the cause of the release was so far beyond reasonable expectation that it could be considered accidental. Id.
Highlands argues that the single occurrence in this case is insufficient to invoke the “sudden and accidental” exception to the pollution exclusion clause because the court would have to engage in the type of “microanalysis” rejected by Lumbermens. Aerovox responds that the terms of the policy provide coverage for any occurrence involving a polluting discharge that is “sudden and accidental,” regardless of whether there were other “non-sudden and accidental” occurrences. The determinative factor here is the ability of Aerovox to show causation between the fire and the pollution for which it was held liable. If Aerovox was unable to do that, then the court would be forced to engage in the type of “microanalysis” rejected by Lumbermens. Furthermore, even in the face of an ongoing pattern of pollution, Lumbermens leaves open the question of whether the “sudden and accidental” exception should apply when the cause of the pollution was beyond the reasonable long-range expectation of the insured. The language in Lumbermens being conjunctive, summary judgment would be improper where an insured could distinguish its claim on even one of the factors in Lumbermens. Aerovox has submitted evidence seeking to distinguish its claims from Lumbermens on both factors and thus summary judgment is not proper.
Highlands also relies on Polaroid Corp. v. The Travelers Indemnity Co., No. 88-5208, (Mass. Super. Ct., Middlesex Cty., September 22, 1992), where the court denied coverage because the entire pattern of conduct was not sudden and accidental. In Polaroid, the insured argued that the large volume of water used to fight a fire at the site has caused the escape of hazardous materials and thus the release was “sudden and accidental.” The court rejected that contention, holding that the water used to extinguish the fire had merely accelerated a preexisting condition and thus the release was not sudden. Polaroid at 10-11. Aerovox argues that Polaroid is distinguishable on the grounds that there was no preexisting process of pollution at the Re-Solve site before the fire. Proper resolution of *259 this issue is dependent on whether there was a preexisting condition of hazardous material release at the Re-Solve site. At the very least, a material issue of fact exists on this issue and therefore summary judgment is improper.
Highland’s final theory on this issue is that “even if a causal relationship between the fire and the pollution is shown, such a showing should not alter the Court’s finding that the properly damage at issue was caused by a pattern of releases which were not sudden and accidental, and is thereby excluded from coverage.” (Highlands Supp. Memo at 8-9.) Such a holding does not appear in the October 8, 1993 order. In that order, the Court held that while there was property damage and there was a sudden and accidental event (the fire), no causal link had been shown and therefore summary judgment was proper absent a showing of a causal relationship. Highlands apparently has taken this to mean that the Court feels that the property damage was caused by a pattern of ongoing pollution because no link was shown. Building on that premise, Highlands thus reasons that to allow Aerovox coverage would allow coverage for any party who intentionally pollutes a site, so long as that party could show some significant sudden and accidental discharge along the way. This argument ignores one key factor: causation. That is what this Court was seeking in its October 8 order and Aerovox is correct when it states that “(i]t is not enough for an insured ‘to point to a single significant sudden and accidental discharge at any time during the entire time the site was in use.’ Rather the insured must show that, as here, it has been held liable for contamination during the policy period caused by the earlier release of hazardous material.” (Aerovox surreply at 9 (emphasis added).)
II. The fire as a source of liability for Aerovox, even though it occurred before Aerovox’s existence.
It is undisputed that the fire in this case occurred in the 1950s prior to the existence of Aerovox. Highlands argues that because Aerovox was not in existence it “cannot possibly be held liable for the pollution caused as a result of the fire at the site. Aerovox can only be held liable, if at all, for having contributed to the pollution at the site, after it . . . came into existence.” (Highlands Supp. Memo at 9-11.) Highlands cites General Chemical v. First State Ins. Co., No. 90-5855 (Mass.Super.Ct., Suffolk Cty., September 18, 1992), for the proposition that when the fire occurred before the insured’s use of the site, it cannot be a basis of liability under the insurance policy. It should be noted, however, that General Chemical is a 1992 Suffolk County Superior Court case while the case that Aerovox relies on, Trustees of Tufts College v. Commercial Union Ins. Co., 415 Mass. 844, is a 1993 SJC case. Tufts stands for the proposition that under a policy similar to the one in this case, “the ‘occurrence’ is the ‘injurious exposure’ to the hazardous material during the policy periods. The ‘property damage’ is the continued contamination of soil and groundwater on the site during the policy period caused by the release of hazardous material.” Tufts at 848; citing Hazen Paper Co. v. United States Fidelity and Guar. Co., 407 Mass 689, 698 (1990). Applying such a holding to the instant case, the occurrence would be the injurious exposure to the hazardous material released by the fire (assuming that the expert opinion of David Herer is correct, which is a proper assumption in a summary judgment proceeding) and the property damage would be the resulting continued contamination.
Although the fire occurred before the existence of the insured, under Tufts and Hazen Paper, if a causal relationship can be shown, coverage is due regardless of whether the insured had a property interest in the site at the time of the release. See Tufts at 848. Since the affidavit of David Herer attempts to show such a causal relationship and is unrebutted, a material issue of fact exists and summary judgment is improper.
III. The effect of Aerovox’s denial of liability
The issue of liability in this case stems from the language of the insurance policy which provides coverage for “such ultimate net loss in excess of the insured’s primary limit as the insured sustains by reasons of liability, imposed upon the insured by law.” Aerovox entered into a consent decree which is the source of liability in this case. Highlands argues that since the consent decree states that “participation by any party shall not be considered an admission of liability for any purpose” (Consent Decree at 9-10), liability has not been imposed by law. The language of Hazen Paper (which involved the same fire and the same consent decree) is controlling when it states that the important point is that “if [the insured] is legally liable to pay certain amounts because of property damage for which the law holds it responsible and [the insurer] is legally obliged to pay damages on account of. . . property damage, [the insured] has policy coverage.” Hazen Paper at 701. So while Aerovox may not be deemed to have admitted liability for the contamination, that fact is irrelevant because liability has been imposed by law.
Highlands argues that allowing Aerovox to obtain indemnity would encourage the insured to settle every frivolous claim, secure in the knowledge that they would be reimbursed by their insurer. Highlands further contends that in limiting the policy to “damages” coverage is precluded. The language of Hazen Paper refutes this argument. See Hazen Paper at 701.
Highland’s motion concludes with a final, rather convoluted, argument. Highlands contends that Aer-ovox cannot maintain inconsistent theories of liability with regard to the pollution. According to Highlands, Aerovox argues that it has been held jointly and severally liable for damages at the site, but also argues that it has never been held liable for ongoing pollution *260 activities at the site. Highlands contends that such a position makes no sense, but when viewed against the backdrop of this case, the position is rational. Aerovox claims that it has not been held liable for ongoing pollution activities (and there is no evidence that it has) in an effort to refute the argument that to look at the “sudden and accidental” nature of the fire is to engage in the type of “microanalysis” forbidden in Lumbermens. Simultaneously, Aerovox argues that it has been held jointly and severally liable for the pollution caused by the release of contaminants in the 1958 fire. Accepting David Herer’s expert opinion as true, such- a position by Aerovox would make sense because the pollution for which it is being held liable would be the result of a single, discrete release in 1958, and no subsequent ongoing polluting activities have occurred since that time.
In conclusion, it is clear that the arguments that Highlands has raised with respect to its motion for reconsideration are not sufficient to justify granting of summary judgment in favor of Highlands. Aerovox has complied with the Court’s order of October 8, 1993, it has submitted evidence tending to show a causal link between a “sudden and accidental” occurrence and a current liability. Material issues of fact remain in this controversy.
ORDER
For the aforementioned reasons, it is hereby ORDERED that the Plaintiffs Motion for Reconsideration be DENIED.