Charlotte **FLANAGAN**, Plaintiff,

v.

Gary I. **GRANT** and Mercia Grant, Defendants.

Civ. A. No. 93–12463–RCL.

United States District Court, D. Massachusetts.

Aug. 8, 1995.

Carmen L. Durso, Boston, MA, Mary F. McCabe, Lawrence, MA, for plaintiff.

Keith B. Hughes, Lawrence, MA, for Gary I. Grant.

James B. Krasnoo, Boston, MA, for Mercia Grant.

LINDSAY, District Judge.

## ORDER

Report and Recommendation Accepted—Judgment shall enter for the defendants.

## REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 4)

December 15, 1994.

BOWLER, United States Magistrate Judge.

Pending before this court is a motion to dismiss or, alternatively, a motion for summary judgment (Docket Entry # 4) filed by defendants Gary I. Grant ("Gary Grant") and Mercia Grant ("Mercia Grant") (collectively: "defendants"). Defendants contend that the complaint is subject to dismissal or summary judgment because it is barred by the statute of limitations or collateral estoppel. (Docket Entry # 5). Plaintiff Charlotte Flanagan ("plaintiff") opposes the motion (Docket Entry # 11) and also submits a reply brief (Docket Entry # 17). After conducting a hearing (Docket Entry # 18), this court took the motion (Docket Entry # 4), construed as a motion for summary judgment, under advisement.

## BACKGROUND

Plaintiff filed this complaint against her parents on November 12, 1993. Plaintiff's claims arise out of the alleged sexual abuse of plaintiff committed by her father, Gary Grant.

The parties do not dispute that the three year statute of limitations applicable to tort claims in Massachusetts applies to plaintiff's action.[1] The parties do dispute, however, whether Massachusetts' discovery rule tolls the running of the statute thereby making this action timely filed.

Plaintiff was born on December 19, 1965. (Docket Entry ## 1 & 7, ¶¶ 5). Defendants are her parents. (Docket Entry ## 1 & 7, ¶¶ 5). Plaintiff avers that from the time she was 14 years old in 1980 to the time she was 18 years old in 1984, Gary Grant forced plaintiff to engage in sexual acts with him, including sexual intercourse, on approximately 40 to 50 occasions. (Docket Entry # 12).

In 1983, plaintiff told her sister, Carol Grant, about the sexual abuse. On May 28, 1984, Mercia Grant, along with plaintiff and Carol Grant, went to the police department in North Andover, Massachusetts ("North Andover police department"). (Docket Entry ## 1 & 7, ¶¶ 11; Docket Entry # 12, ¶ 5). According to the May 28, 1984 police report, plaintiff described a 1980 incident during which her father inappropriately touched her breasts during a business trip to California. Plaintiff also detailed a March 1981 incident during which her father forced her to have sexual intercourse with him. She also related how her father had fondled her on "numerous occasions." Plaintiff was 18 years old at this time. (Docket Entry # 1, Ex. A; Docket Entry # 5, Ex. A).

Plaintiff attests that the North Andover police department then began an investigation into Gary Grant's conduct and filed criminal complaints against Gary Grant in Massachusetts district court.[2] (Docket Entry # 12, ¶ 5). Thereafter, in July 1984 plaintiff signed an affidavit recanting her story. (Docket Entry # 5, Ex. D–3). The affidavit, which plaintiff now maintains is false, explains that she fabricated the story in order to get her father removed from the house. (Docket Entry # 5, Ex. D–3). Plaintiff asseverates that her parents pressured her to recant the story by telling her that her father might kill himself and that she would be responsible for anything which happened

---

1. Jurisdiction is based on the diversity of citizenship of the parties. "[W]here jurisdiction is based on diversity of citizenship, state statutes of limitations apply." *Lareau v. Page,* 39 F.3d 384, 387 (1st Cir.1994). In Massachusetts, tort claims are subject to a three year statute of limitations. Mass.Gen.L. ch. 260, § 2A.

2. Defendants submit a letter (Docket Entry # 5, Ex. C) authored by an attorney indicating the dismissal of the criminal complaints. The letter is not an affidavit nor does it constitute other acceptable evidence within the meaning of Rule 56(c), Fed.R.Civ.P.

to him. Plaintiff further swears that, "Because [she] believed [her] family would get some help, and it would be the end of a very ugly part of [her] life, [she] agreed to recant [her] accusations against [her] father."[3] (Docket Entry # 12, ¶¶ 6–10).

In 1984, therefore, plaintiff was aware that her family, including her father, needed help and that she had an extremely unpleasant or "ugly" life. She further admits that she has "always remembered what [her] father did to [her]." (Docket Entry # 12, ¶ 11). Although explained in greater detail *infra*, Karen P. Wayment, Psy.D. ("Wayment"), who initially evaluated plaintiff in October 1993, avers that upon evaluating plaintiff's condition she believed that plaintiff could recall her father's incest and intellectually understood the relationship between her father's incest and her feelings. Wayment, however, further opines that plaintiff experienced a dissociation between her thoughts and her feelings with respect to the incidents. (No Docket Entry No. Assigned, Wayment Affidavit).

■ On October 5 or 15, 1990, plaintiff, together with her sister Eileen Grant, went to the North Andover police department for a second time in an effort to refile charges of sexual abuse against her father. (Docket Entry # 5, Ex. A, p. 27). Plaintiff was 24 years old at this time. Both sisters were concerned about their younger sister, Laura Grant, then ten years old. Plaintiff admitted to the police detective that she had thought about pursuing "this," presumably criminal charges against her father, for years.[4] (Docket Entry # 5, Ex. E).

■ On October 20, 1990, plaintiff returned to the North Andover police station indicating that "she remembers a lot and would like to charge her father if this is still

possible." (Docket Entry # 5, Ex. E). Plaintiff proceeded to describe a number of incidents of sexual abuse committed by her father as well as the control exerted by her father over the family. She portrays one incident in which she thought she was dreaming. And, at one time, she attempted to commit suicide. The October 1990 report also notes that plaintiff remembers her father saying that, "[H]e can't wait till the statute of limitations runs out in 7 years."[5] (Docket Entry # 5, Ex. E).

In December 1990 plaintiff began psychotherapy. She avers that, "[S]he started to see [that] what [her] father had done to [her]" was reflected in all aspects of her life. (Docket Entry # 12). Thus, she began to realize the dramatic and pervasive extent of her emotional injuries.

In June 1991 plaintiff testified at a state court hearing in *In re Laura Grant*, No. 9018 CP 126A. According to her testimony, she had been thinking about bringing a civil suit against her father. The determining factor as to whether plaintiff would file a civil suit at that time was "[w]hether or not [she was] emotionally ready for it." (Docket Entry # 5, Ex. A).

As previously noted, in October 1993 plaintiff began seeing Wayment for psychotherapy. Wayment avers that plaintiff's diagnosis "was and is Posttraumatic Stress Disorder . . . causally related to the episodes of incest to which she was subjected as a child by her father." (No Docket Entry No. Assigned, Wayment Affidavit).

Wayment asseverates that plaintiff knew about the incestuous acts committed by her father and also intellectually knew the relationship between the acts of incest and her

---

3. In an October 15, 1990 police report and in reference to the 1984 events, plaintiff admits that she lied in court.

4. A police report setting forth factual findings from an investigation is admissible under Rule 803(8), Fed.R.Evid. In addition, statements in the form of opinions or conclusions contained therein are not automatically excluded from the scope of Rule 803(8), Fed.R.Evid. *See Lubanski v. Coleco Industries, Inc.*, 929 F.2d 42, 45 (1st

Cir.1991). Also, an admission of a party opponent contained therein is not hearsay. F.R.E. 801(d)(2).

5. This court does not consider this statement for the truth of the matter asserted. Rather, this court considers the statement for purposes of showing plaintiff's knowledge in October 1990 of the possible existence of a statute of limitations.

feelings. Wayment believes that it was not until October 1993, however, that plaintiff "became aware, in a fully associated way, of the impact and damage of the incest upon her day-to-day functioning." (No Docket Entry No. Assigned, Wayment Affidavit).

Plaintiff offers a number of statements contained in a published book and in an article to support her position that she felt dissociated from the incestuous acts of her father.[6] According to Judith Lewis Herman, M.D. ("Herman"), Associate Professor of Psychiatry at the Harvard Medical School as of 1990, in order to adapt to an incestuous environment, children may resort to a wide variety of psychological defenses. (Docket Entry # 13, Ex. A, p. 102). Herman describes these defenses as follows:

> By virtue of these defenses, the abuse is either walled off from conscious awareness and memory, so that it did not really happen, or minimized, rationalized, and excused, so that whatever did happen was not really abuse. Unable to escape or alter the unbearable reality in fact, the child alters it in her mind.... The capacity for induced trance or dissociative states, normally high in school-age children, is developed to a fine art in children who have been severely punished or abused. Studies have documented the connection between the severity of childhood abuse and the degree of familiarity with dissociative states.

(Docket Entry # 13, Ex. A, p. 102).

With respect to post traumatic stress, Herman notes that:

> The intrusive symptoms of post-traumatic stress disorder also persist in survivors of prolonged, repeated trauma.... People in captivity become adept practitioners of the arts of altered consciousness. Through the practice of dissociation, voluntary thought suppression, minimalization,

and sometimes outright denial, they learn to alter an unbearable reality.
(Docket Entry # 13, Ex. A, p. 87).[7]

## DISCUSSION

The standard for summary judgment is well known. Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in favor of plaintiff, the nonmoving party. *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation*, 931 F.2d 162 (1st Cir.1991).

In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir. 1992) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if it might affect the outcome of the suit or the claim under the governing substantive law. *Beck v. Somerset Technologies*, 882 F.2d 993 (5th Cir.1989) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see generally Lawrence v. Northrop Corporation*, 980 F.2d 66, 68 (1st Cir.1992) (depicting burdens applicable to moving and nonmoving party).

■ Massachusetts law provides that once a defendant "pleads the statute of limitations defense, the plaintiff bears the burden of proving facts that take the case 'outside the impact of the three-year statute of limitations.'" *Hoult v. Hoult*, 792 F.Supp. 143, 144 (D.Mass.1992). As previously noted, Massachusetts has a three year statute of limitations. The determinative date is therefore November 12, 1990, three years prior to the date plaintiff filed this action.

■ The statutory bar is nevertheless subject to flexibility through operation of the

---

6. Plaintiff does not offer these reports through the expert testimony of Wayment. Learned treatises constitute exceptions to the hearsay rule to the extent relied upon by an expert. Fed.

R.Evid. 803(18). This court will assume *arguendo* that Wayment would rely on these statements.

7. Plaintiff refers to a page 88 in her opposition. (Docket Entry # 11, p. 6). The record fails to

Massachusetts discovery rule.[8] "Under the discovery rule, a cause of action accrues when a person (1) knows or has sufficient notice that she was harmed; and (2) knows or has sufficient notice of the cause of the harm." *Lareau v. Page*, 39 F.3d 384, 387 (1st Cir.1994).

■ "The delayed knowledge may be either the fact of injury ... or the cause of the harm." *Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir.1993).[9] In a repressed memory case, the inquiry often centers around the former issue, i.e., knowledge of the injury or the harm. *See, e.g., Hoult v. Hoult*, 792 F.Supp. at 144–145 (the plaintiff lacked conscious memory of sexual abuse and therefore lacked actual knowledge, and a reasonable person would not have been able to discern the harm and its cause). In a connection case, the issue often centers around the latter issue, i.e., knowledge of the connection between the injury and the cause of the injury. *See, e.g., Riley v. Presnell*, 409 Mass. 239, 565 N.E.2d 780, 786 (1991) (accrual of action occurs when "reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience"). While the focus or inquiry may differ in these two types of cases, the essential test or statement of the discovery rule in Massachusetts remains the same.[10] Accordingly, the issue on summary judgment is whether as a matter of law plaintiff knew or had sufficient notice of the harm and/or knew or had sufficient notice of the cause of the harm.

■ Examining whether plaintiff knew or should have known of the harm, plaintiff admits that she remembers the incestuous acts. She states that, "I have always remembered what my father did to me." (Docket Entry # 12). Similarly, Wayment states that, in her judgment, plaintiff "had cognitive recall of the incest committed by her father." (No Docket Entry No. Assigned, Wayment Affidavit). Plaintiff also detailed the incestuous conduct to the police on two separate occasions prior to November 12, 1990. This court therefore concludes that as a matter of law plaintiff knew that she had been harmed prior to November 12, 1990.

Turning to whether plaintiff knew or had sufficient notice of the cause of the harm, plaintiff maintains that she failed to causally connected her father's conduct to the harm she experienced until October 1993. (Docket Entry # 11). Relying on Wayment's conclusion that plaintiff was not fully associated with the impact and the damage of the incest on her ability to function (No Docket Entry No. Assigned, Wayment Affidavit, ¶¶ 4 & 9), plaintiff contends there are factually disputed issues which defeat summary judgment. Plaintiff also claims that *Riley* imposes a subjective rule for determining whether a sexually abused person had discovered her cause of action.[11] (Docket Entry ## 11 & 17).

■ This court disagrees with plaintiff's conclusions. First and foremost, "[t]he plaintiff need not know the full extent of the injury before the statute begins to run." *Lareau v. Page*, 39 F.3d 384, 387 (1st Cir.1994); *accord Riley v. Presnell*, 565 N.E.2d at 784 (victim "need not apprehend the full extent or nature of an injury in order for a cause of action to accrue"). A similar analysis applies

---

contain this page.

**8.** Massachusetts first applied the discovery rule to psychotherapeutic malpractice cases in 1991. *See Riley v. Presnell*, 565 N.E.2d at 784.

**9.** At the hearing, plaintiff maintained there are two types of cases, repressed memory cases and connection cases. Plaintiff emphasized during oral argument that this action was not a repressed memory type of case but was rather a connection type of case. This court finds little benefit from distinguishing between these two "types" of cases. As explained above, each type of case applies the same discovery rule albeit focusing on different aspects of the rule.

**10.** As noted in *Hoult*, the court applied the reasoning of *Riley*. *See Hoult v. Hoult*, 792 F.Supp. at 145.

**11.** Admittedly, the dissent in *Riley* interpreted the court's rule as "largely subjective in operation." *Riley v. Presnell*, 565 N.E.2d at 790 (O'Connor, Justice, dissenting). As explained in the body of the opinion, however, the standard is not completely subjective. The standard imposed is that of "a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint." *Riley v. Presnell*, 565 N.E.2d at 785.

with respect to connecting the defendant's conduct to the harm suffered by the plaintiff. Thus, the plaintiff need "not know or have reason to know that the defendant violated a legal duty to the plaintiff, but only that she knew or had reason to know that she had been harmed by the defendant's conduct." *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 557 N.E.2d 739, 741 (1990). The limitations period begins "to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." *Bowen v. Eli Lilly & Co.*, 557 N.E.2d at 741.

The record shows that plaintiff was suicidal prior to November 12, 1990. In May 1984 she went to the North Andover police station with her mother and her sister to report the sexual abuse of her father. Criminal complaint charges were thereafter filed. In October 1990 plaintiff went to the North Andover police station for a second time in order to complain about her father's conduct. As indicated in the October 1990 police report, plaintiff wanted to file criminal charges against her father if possible. She stated that she had thought of pursuing the matter for a number of years. She also knew that her father was concerned about the existence of a statute of limitations.

Intellectually she understood the relationship between her feelings and her father's incest, according to Wayment. Emotionally, however, plaintiff "suffered from dissociation between her thoughts and feelings." (No Docket Entry No. Assigned, Wayment Affidavit). As a coping mechanism, therefore, plaintiff understandably disassociated her feelings from her father's actions. Only in the fall of 1993 did plaintiff "become aware, in a fully associated way, of the impact and damage of the incest upon her day-to-day functioning," according to Wayment. (No Docket Entry No. Assigned, Wayment Affidavit).

In other words, plaintiff intellectually recognized the cause of her injuries prior to November 12, 1990. Emotionally, however,

she was unable to appreciate the full effect or extent of the damage rendered by her father's conduct.

*Riley* is not to the contrary. The plaintiff in *Riley*, who sued his therapist for sexual abuse, knew that his therapist's treatment was substandard and inappropriate prior to the March 1981 accrual date of the statute of limitations. The plaintiff was unable, however, to connect the substandard treatment with his injuries until he met with a patient who had experienced similar abuse by the defendant. This meeting took place after March 1981. The plaintiff therefore lacked actual knowledge of the cause.[12]

In contrast, Wayment's affidavit fails to set forth a factual dispute. In fact, the affidavit states that plaintiff understood on an intellectual basis the relationship between her feelings and her father's incest.

"A cause of action will accrue when the plaintiff actually knows of the cause of action or when the plaintiff should have known of the cause of action." *Riley v. Presnell*, 565 N.E.2d at 785. In the case at bar, although plaintiff did not fully experience the extent of the damage inflicted by her father, she nevertheless realized that her father was the likely cause of her injuries prior to November 12, 1990. Having so found, this court need not address whether a reasonable person in plaintiff's position would have been able to discern that she was harmed by her father's conduct.

"A statute of limitations legislatively established [should] not be easily overlooked." *Tagliente v. Himmer*, 949 F.2d 1, 4 (1st Cir.1991). Plaintiff's citation to a case decided under a Michigan statute, *Nicolette v. Carey*, 751 F.Supp. 695 (W.D.Mich.1990), fails to persuade this court that Massachusetts law would reach the same result. Having determined that plaintiff's cause of action is barred as a matter of law under Massachusetts' three year statute of limitations, this court need not address defendants' collateral estoppel argument.

---

**12.** In addition, the plaintiff in *Riley* presented expert testimony that "a reasonable person who had been exploited in the way Riley claims to have been would not have been able to make the causal connection between treatment and injury." *Riley v. Presnell*, 565 N.E.2d at 786 (reversing lower court's allowance of summary judgment).

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[13] that defendants' motion for summary judgment (Docket Entry # 4) be **ALLOWED.**

---

13. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).