Fecteau, J.
This matter is before the court on defendant’s, Alderman & MacNeish, Inc., motion for summary judgment seeking dismissal of plaintiff, Town of Hopedale’s, complaint. The present action arises from a Contract for Architect Services between the parties under which the defendant was to provide architectural services related to renovations and construction of an addition to the Memorial Elementary School in the Town of Hopedale. As a result of the perceived failings of the defendant’s performance, plaintiff brought the present action on January 15, 1999 alleging in its complaint claims lying in both negligence and breach of contract. Defendant, in its present motion, contends that all of the plaintiffs claims lie in tort, rather than contract and negligence, and are barred as a matter of law by the applicable three-year statute of limitations as stated in G.L.c. 260, Sec. 2B. The plaintiff, however, asserts that, since the defendant made express warranties as to its performance under the contract between the parties, it may bring a breach of contract claim and that the six-year statute of limitations of G.L.c. 260, Sec. 2 applies to said claim. Alternatively, plaintiff contends that even if the three-year statute of limitations of G.L.c. 260, Sec. 2B is found to apply to all of its claims, there are still disputed material facts as to whether the plaintiffs complaint was filed within the applicable three years. The court heard the parties in argument on January 22, 2001.[1] For the following reasons the defendant’s motion for summary judgment is DENIED.
FACTUAL BACKGROUND
On January 20, 1994, the plaintiff and the defendant entered into a contract for architectural services related to renovations and construction of an addition to the Memorial Elementary School in Hopedale (“the project”). Congress Construction Company, Inc. (“Congress”) was the general contractor on the project. The contract for architectural services entered into by the parties contained the following provisions as to the defendant’s performance:
1)The Architect shall be responsible for the professional and technical accuracy and the coordination of all designs, drawings, specifications, estimates and other work furnished by him or his consultants and subcontractors. The Architect shall staff his offices with sufficient personnel to complete the services required under this contract in a prompt and continuous manner, and shall meet the approval schedule and submittal dates established during the course of this AGREEMENT.
Article 5, section 5.1.
2) Upon the award of the construction contract the Architect and his consultants shall, for the purposes of protecting the Awarding Authority against defects and efficiencies in the work of the Project: (1) be charged with general administration of the construction contract; (2) furnish the General Contractor with information to assist in establishing lines and grades and such large scale drawings and full sized detailed drawings as maybe required; (3) promptly check and approve, schedules, shop drawings and other submissions by the General Contractor; (4) visit the site of the Project; (5) conduct semi-final and final inspections of the construction project and report the results of such inspections in writing to the Awar ding Authority; (6) report to the Awarding Authority weekly in writing on the progress of construction; (7) recommend condemnation of all project work observed by the Architect which fails to conform to the Contract Documents; (8) decide all questions regarding interpretation of or compliance with the Contract Documents; (8) decide all questions regarding interpretation of or compliance with the Contract Documents; (9) review and act on all request for change in plans, specifications, or contracts for the Project; and (10) furnish working plans and specifications for any such change.
The Architect shall be familiar with the provisions of the General Laws for payment to contractors and shall submit to the Awarding Authority all requisitions for payment submitted by the general contractor. With respect to each such requisition, he or she shall certify to the best of the Architect's knowledge that the percentage of work included in the requisition is accurate and the work performed conforms with the contract documents . . . Timely payments of general contractors is required by General Laws Chapter 30, section 39K; therefore, the Architect shall establish office procedures assuring either immediate mail or messenger delivery of the requisition for payment to the Awarding Authority, and shall process requisition for payment within forty-eight hours of receipt.
Article 6, sec 6.1, para 5.
3)... The Architect shall indemnify and save harmless the Awarding Authority, and all municipal boards, commissions, departments or officers against suits, claims of liability for or on account of any injuries to persons or damage to property to the extent that the same are the result of the negligence of the Architect in the performance of work covered by this AGREEMENT and/or failure to comply with the terms and conditions of this AGREEMENT, whether by himself or his employees, consultants or subcontractors.
*93 Article 15, sec. 15.5.
4) The project scope shall consist of the following: ... All Architectural-Engineering Services to produce construction and bid documents, bidding and construction inspection services as required to meet the requirements of the Massachusetts Board of Education, and all other applicable laws, codes, and ordinances.
Attachment A, para D.
The construction contract between the plaintiff and Congress, to which the defendant was not a party, but in which some of its duties were discussed, contained both the standard form of General Conditions and two forms of supplementary conditions. The General Conditions to the construction contract documented that “(a]s to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion.” The construction contract also called for the completion of the project in time for the beginning of the 1995 school year, but said completion was delayed and alternative facilities had to be used for the first 2 months of the school year.
The plaintiff alleges that the defendant was responsible for the delay in completion of the project. In particular, the plaintiff alleges that the defendant failed to properly identify a wetland resource on the property at the beginning of the project, and failed to obtain an Order of Conditions. The Department of Environmental Protection raised the wetland issue in November of 1994, while construction was proceeding, and required a change in the building plans which caused delay and resulted in a change order of $ 101,459.00 for extra work. The plaintiff has acknowledged that it knew on or before November 22, 1994 that the defendant had failed to properly identify an existing wetland resource and that it began to incur expenses as result of the defendant’s failure to properly identify said wetland resource by December 28, 1994.
In addition to the wetland issue, plaintiff has alleged several design defects which allegedly resulted in substantial cost overruns and related expenses. Among those alleged defects are a timber wall which allegedly failed because it was designed at an inadequate depth; conflicts in the design of drain and sewer lines, which allegedly resulted in a defective drain line; landscape design errors which allegedly led to runoff and standing water problems; an alleged failure to identify in the drawings the necessity for installing a fire separation wall between the old and new buildings; an alleged failure to identify the existence of asbestos floor tiles in the old building; the alleged design of blackboards and fire alarms at incorrect heights; and the alleged failure to provide a complete set of “as-built” drawings to the Town.
DISCUSSION
Summary judgment shall be granted where there are no issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, therefore, she is entitled to judgment as a mailer of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). If the moving party establishes the absence of a triable issue, in order to defeat a motion for summary judgment, the opposing party must respond and allege facts which would establish the existence of disputed material facts. Id.
A judge, when ruling on a motion for summary judgment must consider “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, in determining whether summary judgment is appropriate.” Flesner v. Technical Communications Corporation et al., 410 Mass. 805, 807 (1991). Where no genuine issue of material fact exists, “the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Id., citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
The first issue this court must decide is which statute of limitations applies to the plaintiffs breach of contract claim. It has been argued by the defendant that since the “gist” of the plaintiffs’ claim lies in tort the three-year statute of limitations provided for in G.L.c. 260, Sec. 2B[2] should be used and the plaintiffs complaint should be dismissed. The plaintiff, however, asserts that, while normally the three-year statute of limitations would apply in these circumstances, the defendant in this case made express written warranties as to its performance and that because of this the six-year statute of limitations as set out in G.L.c. 260, Sec. 2[3] should be used. Neither party disputes the other’s interpretation of the relevant sections G.L.c. 260.
Where a design professional “assures [a party] that its work would be fit for an intended purpose . . . such an assurance [may] impose a higher standard of performance of said design professional than its implied warranty of reasonable care." Anthony’s Pier Four v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818, 828 (1986) (a design professional’s assurances that its work would be fit for the intended purpose of permanently mooring a ship led to its having a higher standard of care). In some cases a design professional, such as an architect, “may *94 provide an express warranty of certain results. In that event, [a] plaintiff may maintain an action for breach of an express warranty.’’Klein v. Catalano, 386 Mass. 701, 720 (1982); Anthony’s Pier Four, 396 Mass. at 828 (“If a design professional expressly warrants a certain result, the plaintiff may maintain an action for breach of express warranty”). Otherwise, the professional designer makes an implied promise, i.e., that his services will conform to those of the average qualified member of his profession, which is, by element, the same as in the negligence case. Klein v. Catalano, supra, at 719.
“What differentiates an [implied promise/warranty] and express warranty is that the ‘standard of performance is set by the defendant’s promises, rather than imposed by law.’ ” Coca-Cola Bottling Company of Cape Cod v. Weston & Sampson Engineers, Inc., 45 Mass.App.Ct. 120, 128 (1998). “More specifically, an express warranty promises that a specific result will be achieved — in contrast to a promise implied by law — namely, that the work of the professional conforms to the standards of his or her profession.” See id. In this case, then, if it can be shown that the defendant did in fact provide the plaintiff with express warranties as to its performance the plaintiffs claims, as stated in Count I of its complaint, lie in contract and the six-year statute of limitations of G.L.c. 260, Sec. 2 will apply.
The basic principles of law governing contract interpretation are well settled, and are not in dispute. The Court must consider “the particular language used against the background of other indicia of the parties’ intention,” and must “construe the contract with reference to the situation of the parties when they made it and to the objects sought to be accomplished . . . Not only must due weight be accorded to the immediate context but no part of the contract is to be disregarded.” Starr v. Fordham, 420 Mass. 178, 190 (1995) (citations omitted). Further, a contract “should be construed to give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.” Id. at 192, citing Shane v. Winter Hill Fed. Sav. & Loan Ass’n, 397 Mass. 479, 483 (1986). The principle guide to contract interpretation is, of course, the language of the contract itself. “Words that are plain and free from ambiguity must be construed in their usual and ordinary sense.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998); Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 427 (1995).
In this case, several provisions of the Contract have been cited by the plaintiff as specific express warranties made by the defendant as to its performance. For example, Article 5, section 5.1 of the contract, entitled Professional Responsibility states, in relevant part, that:
The Architect shall be responsible for the professional and technical accuracy and the coordination of all designs, drawings, specifications, estimates and other work furnished by him or his consultants and subcontractors. The Architect shall staff his offices with sufficient personnel to complete the services required under this contract in a prompt and continuous manner, and shall meet the approval schedule and submittal dates established during the course of this AGREEMENT.
[Emphasis added.) Article 6, sec 6.1, para 5, entitled Architect's Services During Construction, states that:
Upon the award of the construction contract the Architect and his consultants shall, for the purposes of protecting the Awarding Authority against defects and efficiencies in the work of the Project: (1) be charged with general administration of the construction contract; (2) furnish the General Contractor with information to assist in establishing lines and grades and such large scale drawings and full sized detailed drawings as maybe required; (3) promptly check and approve, schedules, shop drawings and other submissions by the General Contractor; (4) visit the site of the Project; (5) conduct semi-final and final inspections of the construction project and report the results of such inspections in writing to the Awarding Authority; (6) report to the Awarding Authority weekly in writing on the progress of construction; (7) recommend condemnation of all project work observed by the Architect which fails to conform to the Contract Documents; (8) decide all questions regarding interpretation of or compliance with the Contract Documents; (8) decide all questions regarding interpretation of or compliance with the Contract Documents; (9) review and act on all request for change in plans, specifications, or contracts for the Project; and (10) furnish working plans and specifications for any such change.
The Architect shall be familiar with the provisions of the General Laws for payment to contractors and shall submit to the Awarding Authority all requisitions for payment submitted by the general contractor. With respect to each such requisition, he or she shall certify to the best of the Architect’s knowledge that the percentage of work included in the requisition is accurate and the work performs with the contract documents . .. Timely payments of general contractors is required by General Laws Chapter 30, Section 39K; therefore, the Architect shall establish office procedures assuring either immediate mail or messenger delivery of the requisition for payment to the Awarding Authority, and shall process requisition for payment within forty-eight hour of receipt.
Article 15, entitled Insurance, section 15.5 states that:
The Architect shall indemnify and save harmless the Awarding Authority, and all municipal boards, commissions, departments or officers against suits, claims of liability for or on account of any injuries *95 to persons or damage to property to the extent that the same are the result of the negligence of the Architect in the performance of work covered by this AGREEMENT and/or failure to comply with the terms and conditions of this AGREEMENT, whether by himself or his employees, consultants or subcontractors.
Finally, as stated in Attachment A, Sec. D the defendant was responsible for “[a]ll Architectural-Engineering and bid documents, bidding and construction inspection services as required to meet the requirements of the Massachusetts Board of Education, and all other applicable laws, codes, and ordinances.”
A fair reading of the above cited sections in the context in which they were written leads this court to find that the defendant did in fact make certain assurances in this matter beyond those normally expected or implied in the professional services context. This defendant made assurances to provide technical accuracy and that its designs would comply with certain laws, as well as provide for specific results; these references are indicative of a willingness to accept imposition “of a higher standard of performance of said design professional than its implied warranty of reasonable care.” Anthony’s Pier Four, 396 Mass. at 828, see also Coca-Cola Bottling Company of Cape Cod, 45 Mass.App.Ct. at 128-29 (the appeals court found that a question as to whether or not a design professional orally promised that the legal requirements of a permit would be met created a question of fact for the jury as to which statute of limitations applied). The defendant in this case, as evidenced by the previously discussed portions of its contract with the plaintiff, has made express warranties as to its performance and abiding by the generals laws of this state. Consequently, the plaintiff may bring a claim for breach of contract, and said claim is subject to the six-year statute of limitations set forth in G.L.c. 260, Sec. 2. Thus, plaintiffs claim for breach of contract is not time barred.
The second issue before the court on defendant’s motion is whether the evidence on the record presents any genuine issue as to whether plaintiffs negligence claim is barred by the three-year statute of limitations of G.L.c. 260, Sec. 2B. “The legislature has not defined when a cause of action accrues for purposes of the statute of limitations.” Riley v. Presnell, 409 Mass. 239, 243 (1991). “That determination, therefore, ‘has long been the product of judicial interpretation in this Commonwealth.’ ” Id. citing Franklin v. Albert, 381 Mass. 611, 617 (1980).
In this Commonwealth, courts use the “discovery rule” to determine when a claimant’s negligence claim has accrued for the purposes of a particular statute of limitations. Id. see also Hendrickson v. Sears, 365 Mass. 83, 89-90 (1974), and Friedman v. Jablonski, 371 Mass. 482, 485-86 (1976). “The discovery rule is designed to postpone the accrual date of causes of action when the defect is ‘inherently unknowable.’ ” Mansfield v. GAF Corp., 5 Mass.App.Ct. 551, 555 (1977), citing Hendrickson v. Sears, 365 Mass. 83, 90 (1974). Under the discovery rule, it is not required that “a plaintiff have notice of breach of a duty before a cause of action may accrue, but [a plaintiff is required to] have (1) knowledge or sufficient notice that they were harmed and (2) knowledge or sufficient notice of what the cause of harm was.” Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990).
“The reasonable person who serves as the standard in this evaluation, however, is not a detached, outside observer assessing the situation without being affected by it.” Riley, 409 Mass. at 245. “Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiffs complaint.” Id. See also Bowen v. Eli Lilly & Co., 408 Mass. 204, 208 (1990) (noting that the court should look at “a reasonable person in the position of the plaintiff’). To prevail on summary judgment then, the defendant in this matter must show that there are no genuine disputes as to whether the plaintiff should have known of its cause of action on or before January 15, 1996.
Initially, this court must address defendant’s contention that Article 13.7 of the General Conditions of the Construction Contract applies to it. Article 13.7.1.1 states that:
As between the Owner and the Contractor:
Before Substantial Completion. As to acts or failures to act occurring prior to the relevant date of Substantial Completion, any applicable statute of limitations shall commence to run and any alleged cause of action shall be deemed to have accrued in any and all events not later than such date of Substantial Completion!.]
Defendant asserts that since the Certificate of Substantial Completion was issued on the project on January 12, 1996 that all claims against it in this matter accrued on said date as provided by the General Conditions of the Construction Contract. The language of the Construction Contract, however, specifically refers to the Owner and the Contractor, not the architect, as the parties to it. The only fair reading of said provision, the defendant having presented no evidence to suggest that the court should look beyond the language of the agreement, is that Article 13.7 speaks only to potential causes of action between the plaintiff and Congress and not those which may be brought against the defendant. Thus, defendant can not assert that, based solely on the contracts between the parties, the plaintiffs claims accrued on January 12, 1996.
Finally, in Count I of its’ compliant, plaintiff asserts that the defendant failed, in the performance of its duties, to exercise “the standard of reasonable *96 care required of a professional architect” and that such failure “was the proximate cause of damages to the plaintiff.” Plaintiffs Complaint page 4, paras 18-19. As grounds for Count I of its complaint the plaintiff has alleged numerous deficiencies with the defendant’s job performance as it related to the construction of additions and alterations to the Memorial Elementary School in Hopedale. Included inplaintiffs complaint are the followingfactual allegations: (1) The defendant failed to properly identify an existing wetland resource on the proposed construction site, and failed to obtain the required Order of Conditions which would have permitted the work on the Project to proceed on schedule. (2) The defendant’s plans for the Project were defective in that they failed to identify the necessity for installing a fire separation wall between the old and new buildings of the Memorial School. (3) The defendant’s plans for the positioning and installation of drain and sewer lines servicing the school were defective and created unworkable conflicts in the placement of theses lines. (4) The defendant’s plans for positioning and installation of a number ofretain - ingwallsinconnectionwiththegradingworkrequired under the construction contract were defective and resulted in the improper installation of the retaining walls. (5) The defendant’s plans for landscape design in connection with the Project were defective and have resulted in recurrent runoff problems, the persistent collection of standing water in close proximity to the school building and numerous instances of water damages to the Memorial Schoolbuilding itself. (6) The defendant’s plans for renovations tobe undertaken in connection with the Project failed to identity the presence of asbestos floor tiles. (7) The defendant’s plans for the Project resulted in the installation of blackboards at incorrect heights. (8) The defendant’s plans for the Project resulted in the installation of fire alarm devices at incorrect heights. (9) The defendant failed to provide the plaintiff with complete “as built” drawings as required by the terms of the Contract.
The defendant, in its Memorandum in Support of its Motion for Summary Judgment, has asserted, and submitted materials to the effect, that any claims based on the previously cited factual allegations are time barred in that the accrual dates for all of the allegations occurred more than three years before the plaintiff filed its complaint. The plaintiff, in its opposition to the defendant’s motion, has specifically contested the defendant’s assertions only as to four of the of the nine factual allegations made in its complaint and as such this court finds that any negligence claims which might have arisen from those other five allegations are time barred. Those four factual allegations specifically addressed and contested by the Plaintiff are: 1) the alleged defectiveness of the defendant’s plans for the Project in failing to identify the necessity for installing a fire separation wall between the old and new buildings of the Memorial School; 2) the alleged defectiveness of the defendant’s plans as they related to the positioning and installation of drain and sewer lines servicing the school; 3) the alleged defectiveness of the defendant’s plans for positioning and installation of a number of retaining walls in connection with the grading work required under the construction contract; and 4) the alleged failure of defendant to provide the plaintiff with complete “as built” drawings as required by the terms of the Contract.
As to these four remaining factual allegations, both parties have submitted materials, including testimony, change order forms, and correspondence, none of which is definitive as to the questions before this court such that an absence of triable issues has been shown. In essence, the differing evidence presented by the parties as to the timeliness of the remaining allegations cancels itself out and we are left with questions which may only be answered by the factfinder. Thus, after reviewing all of the materials presented by the parties in this matter it is the opinion of this court that reasonable persons could And that there are disputed material issues in this case and that because of this summary judgment is not appropriate.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s, Alderman & MacNeish, Inc., motion for summary judgment is DENIED.[4]

 following the hearing, the defendant sent to this justice a letter dated January 31, 2001, purporting to address issues raised by the court during the hearing. The letter was neither requested nor appropriately filed. In response to the letter, plaintiffs counsel also sent a letter. The content of both letters have been disregarded and are stricken. In the future, counsel would be better advised to file with the clerk “supplemental briefs” that are captioned as such after seeking leave to file such further arguments.

 G.L.c. 260, Sec. 2B states, in relevant part, that an “[a]ction of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property, . . . shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner."

 G.L.c. 260, Sec. 2 states, in relevant part, that “[a]ctions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied, . . . shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues.

 As stated previously in this opinion, at trial the plaintiff is precluded from supporting Count I of its complaint, with evidence of those factual allegations which have been found to be time barred by this court. The plaintiff, however, may present evidence of said factual allegations to support those other counts in its complaint not lying in negligence.