Riley *v.* Presnell.

ROBERT SCOTT RILEY *vs.* WALTER M. PRESNELL.

Essex. October 3, 1990. - January 28, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil*, Summary judgment. *Limitations, Statute of. Medical Malpractice*, Statute of limitations. *Psychotherapist. Incompetent Person*, Statute of limitations. *Estoppel.*

A judge before whom a civil action was to be tried had the authority, on his own initiative, to reconsider a motion for summary judgment that had been denied over three years earlier by a different judge. [242]

An action against a psychotherapist for malpractice did not accrue, for purposes of the applicable statute of limitations, until the plaintiff knew or reasonably should have known that he may have suffered injury because of the psychotherapist's conduct. [242-245]

In a malpractice action against a psychotherapist, where the record raised a genuine issue of material fact as to whether a reasonable person, who had been subjected to the conduct that formed the basis of the plaintiff's complaint, should have known that he may have been injured by the therapist, summary judgment against the plaintiff on statute of limitations grounds was inappropriate; any disputed factual issues as to the accrual of the cause of action were to be decided by the trier of fact. [245-248] O'CONNOR, J., dissenting.

In a malpractice action against a psychotherapist, the running of the statute of limitations was not tolled as the result of alleged psychological and emotional barriers to the plaintiff's confronting the defendant by bringing an action against him. [248-249]

In a malpractice action against a psychotherapist, the nature of the defendant's alleged misconduct, which included no representations that would induce the plaintiff not to bring suit, was not such as to estop the defendant from asserting the statute of limitations as a defense. [249]

The record on a motion for summary judgment demonstrated that the plaintiff in a civil action had not been "insane" for purposes of tolling the running of the statute of limitations under G. L. c. 260, § 7, as in effect at the relevant time. [249-250]

The statute of limitations with respect to a former patient's malpractice claims against a psychotherapist began to run when the plaintiff became aware, or reasonably should have become aware, of the cause of

action, irrespective of the defendant's alleged breach of fiduciary duty in concealing facts relevant to the potential action. [250-251]

CIVIL ACTION commenced in the Superior Court Department on March 1, 1985.

The case was heard by *Peter F. Brady*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Stanley J. Spero* (*Linda Jorgenson* with him) for the plaintiff.

*Anthony M. Doniger* for the defendant.

NOLAN, J. This case requires us to determine whether and in what manner the so-called "discovery rule" affects the accrual of a malpractice action against a psychotherapist for purposes of the statute of limitations. We hold that an action against a psychotherapist for malpractice does not accrue, and therefore the statute of limitations does not begin to run, until the plaintiff knew or reasonably should have known that he may have suffered injury because of the psychotherapist's conduct. We further hold that the question when a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact. The evidence in this case raises a genuine issue of material fact as to whether the plaintiff knew or should have known that he may have been injured by his therapist. Thus, summary judgment in favor of the defendant was inappropriate. Therefore, we reverse the judgment of the Superior Court and remand this case for a trial which shall include the issue of the statute of limitations.

On April 10, 1986, the defendant's motion for summary judgment was denied. Several years later, before the trial of the matter was to have commenced, a different judge reconsidered the 1985 motion. On December 15, 1989, after a hearing, the judge allowed the motion for summary judgment. Because this matter is before us on the defendant's motion for summary judgment, we outline the facts from the

record in the light most favorable to the plaintiff. *Attorney Gen.* v. *Bailey* 386 Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982).

In 1975, the plaintiff, Robert Scott Riley, was referred to the defendant, Dr. Walter M. Presnell, by the Massachusetts Rehabilitation Commission. Riley was an epileptic who had been experiencing some emotional difficulties, but did not suffer from any major psychopathology at the time he began treatment. Some months into the therapy, Dr. Presnell began to introduce alcohol and marihuana into the therapy sessions. The use of these substances continued and increased through the four years of therapy. Dr. Presnell also dispensed liberal prescriptions of Valium to Riley. On at least two occasions, purportedly as a way to deal with Riley's feelings toward his father, Dr. Presnell persuaded Riley to engage in various sexual acts with him. Riley was uncomfortable with the sexual activity and after the second or third incident refused to participate further. Nevertheless, Riley apparently became totally dependent on Dr. Presnell, on one occasion opining that Dr. Presnell might be "God." Dr. Presnell told Riley not to tell anyone of the nature of the therapy because it was "special" and the world would neither understand nor approve.

In 1979, Dr. Presnell abruptly terminated the therapy without even referring Riley to another psychiatrist. Dr. Presnell left Riley with a three-month prescription for Valium. When this prescription was depleted, Dr. Merrick Fisher provided Riley with a one-month Valium prescription. Riley's wife sought to renew the prescription, but Dr. Fisher told her that Riley had used the prior prescription far too quickly and was addicted to Valium.

In early 1980, Riley began therapy with another psychiatrist, Dr. Frederic Oder. Dr. Oder helped Riley recover from his Valium addiction. Riley was by this time also experiencing more severe emotional and psychological problems, was drinking heavily, and had domestic problems. During his treatment, Riley related all aspects of his prior therapy to Dr. Oder. Dr. Oder told Riley that Dr. Presnell's treatment as a whole was substandard, bad, and essentially "nontreat-

ment" and that specific aspects of the treatment — the sexual contact and the abrupt termination, for instance — were totally inappropriate. Dr. Oder did not tell Riley that any of his psychological or emotional problems were caused by the substandard treatment.

Riley left therapy with Dr. Oder in 1981, only to return in December, 1983. In 1984, Dr. Oder put Riley in touch with another former patient of Dr. Presnell. This person allegedly had been similarly abused by Dr. Presnell and was suffering from many of the same psychological and emotional problems as Riley. Riley claims that only after his meeting with this other patient did he realize that there was a causal link between his condition and the treatment he received from Dr. Presnell. The issue before us is whether the evidence on the record presented any genuine issue as to whether Riley's action was barred by the statute of limitations.

We note at the outset that the trial judge had the authority to reconsider the motion for summary judgment sua sponte. Although a judge should not lightly undo the work of another judge, *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 622 (1989), the power to reconsider an issue remains in the court until final judgment. *Peterson* v. *Hopson*, 306 Mass. 597, 601 (1940). "Even without rehearing, a judge may modify a decision already announced, so long as the case has not passed beyond the power of the court." *Id.* at 602. The denial of a motion for summary judgment is not a final judgment or decree and thus the trial judge was within his authority to reconsider and alter the prior decision.

Riley brought this action against Dr. Presnell seeking damages for the psychological and emotional injuries which flowed from the inappropriate psychotherapy. Riley's complaint includes counts for negligence, breach of contract, infliction of emotional distress, battery, and invasion of privacy (malpractice claims), as well as an unfair and deceptive trade practices claim under G. L. c. 93A (1988 ed.). General Laws c. 260, § 5A (1988 ed.), provides that all actions under c. 93A be brought within four years after they accrue. Gen-

eral Laws c. 260, §§ 2A and 4 (1988 ed.), provide a three-year limitation as to all of Riley's other claims. Riley brought this action in March, 1985. Thus, if his cause of action accrued prior to March, 1981, all the counts are barred. If his cause of action accrued between March, 1981, and March, 1982, only the c. 93A claim stands.

The Legislature has not defined when a cause of action accrues for purposes of the statute of limitations. That determination, therefore, "has long been the product of judicial interpretation in this Commonwealth." *Franklin* v. *Albert*, 381 Mass. 611, 617 (1980). The general rule in personal injury actions is that the cause of action accrues when the plaintiff is injured. See *Fortin* v. *Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442 (1984); *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 741 (1978).

In *Franklin* v. *Albert*, *supra* at 619, we held that a cause of action for medical malpractice accrues "when the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct." One need not apprehend the full extent or nature of an injury in order for a cause of action to accrue. See *Olsen* v. *Bell Tel. Laboratories, Inc.*, 388 Mass. 171 (1983) (cause of action for insidious disease accrues on discovery of any injury rather than on discovery that injury was permanent). In *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 208 (1990), we held that "[w]e do not require that a plaintiff have notice of a breach of duty before a cause of action may accrue, but we do require that a plaintiff have (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was."

We have applied this "discovery rule" to claims for legal malpractice, *Hendrickson* v. *Sears*, 365 Mass. 83, 89-90 (1974), and real estate fraud, *Friedman* v. *Jablonski* 371 Mass. 482, 485-486 (1976). We see no reason not to apply the same rule to cases involving alleged psychotherapeutic malpractice.

Once the defendant pleads the statute of limitations as a defense to a malpractice action and establishes that the ac-

tion was brought more than three years from the date of the injury, the burden of proving facts that take the case outside the impact of the statute falls to the plaintiff. *Albert* v. *Franklin, supra* at 619. The question before us then, is whether Riley failed as a matter of law to show that he did not know and should not have known he had been harmed by Presnell's conduct.

This case was decided on a revived motion for summary judgment. Under Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." When considering a motion for summary judgment, the judge should not consider the credibility of the witnesses or the weight of the evidence, nor should the judge make findings of fact. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 370 (1982).

Applying the test set forth in *Bowen, supra* at 208, we must determine whether, as a matter of law, Riley had "(1) knowledge or sufficient notice that [he] was harmed and (2) knowledge or sufficient notice of what the cause of harm was." There was no genuine dispute that Riley knew of the psychological ailments of which he now complains before 1981. Riley's arguments rest on his inability to identify the cause of those ailments. He claims that he reasonably did not know that the improper treatment he received from Dr. Presnell could have caused any of his problems until 1984, the year he met another patient of Dr. Presnell who was suffering from similar problems.

A cause of action will accrue when the plaintiff actually knows of the cause of action or when the plaintiff should have known of the cause of action. Riley introduced evidence which tended to demonstrate that he had no actual knowledge of his cause of action prior to 1984. Riley stated in an affidavit that "I did not know or discover that the emotional and psychological injuries from which I was suffering were the result of my relationship with Dr. Presnell until 1984." He also averred, "Finally, in December of 1983, I went back

to see Dr. Oder. It was during my therapy with him — which has continued to the present — that I learned that the 'therapy' of Dr. Presnell had been damaging to me. I learned that he was the root of my Valium addiction, alcohol abuse and marijuana use. I learned that the sexual contact was inappropriate and damaging."

Dr. Oder filed an affidavit supporting Riley's contention: "During this same period [January, 1980 to February, 1981] I did not tell Mr. Riley that as a result of this bad treatment by Dr. Presnell he had been psychologically harmed." Dr. Oder further stated, "In early 1984, I advised Mr. Riley of a second patient I was treating who had been victimized by Dr. Presnell . . . . It was after Mr. Riley's meeting with this patient that he began to understand and believe that he was psychologically harmed as a result of the negligent and substandard treatment by Dr. Presnell."

In order for Dr. Presnell to prevail on summary judgment, therefore, he must show that there is no genuine dispute as to whether Riley should have known of his cause of action in 1981. Individual variations in judgment, intellect, or psychological health which are unrelated to the complained-of conduct are not considered. Only if a reasonable person in the plaintiff's position would have been able to discern the harm or the cause of the harm will the cause of action accrue and the limitations period begin to run.

The reasonable person who serves as the standard in this evaluation, however, is not a detached, outside observer assessing the situation without being affected by it. Rather, it is a reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint. As we noted in *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 208 (1990), we look at "a reasonable person *in the position of the plaintiff*" (emphasis supplied). If such an initially reasonable person would, by reason of the experience forming the basis for the plaintiff's complaint, have his or her judgment altered in some way, such altered judgment then becomes the standard. The cause of action will not accrue until such an individual would have discovered the damage. In other

words, if the defendant's conduct would, in an ordinary reasonable person, cause an injury which by its very nature prevents the discovery of its cause, the action cannot be said to have accrued. Accrual of the cause of action occurs when the ordinary reasonable person who had been subject to the experience would have discovered that the injury was caused by that experience.

An injury to the mind could interfere with the discovery of the cause of action. Here, Dr. Presnell has allegedly caused great psychological harm to Riley, and that very harm allegedly caused Riley to be unable to link the misconduct to the damage.[1] Furthermore, there was evidence to support the conclusion that a reasonable person who had been subject to the type of abuse alleged by Riley would have been unable to draw a causal connection between that improper therapy and the psychological problems.

Riley presented expert testimony to the effect that a reasonable person who had been exploited in the way Riley claims to have been would not have been able to make the causal connection between treatment and injury. Dr. Thomas G. Gutheil, a psychiatrist with experience in this area, testified that he was of the opinion that, because of the type of "therapy" used by Dr. Presnell, Riley could not make the necessary causal link. He opined that such a response would be normal among the "general patient population" who "had been exposed to this type of exploitation."[2]

---

[1]We leave to another day whether any other type of injury could similarly interfere with the discovery of its own cause.

[2]The expert testified in part as follows:

COUNSEL FOR THE PLAINTIFF: "Doctor Gutheil, to a reasonable degree of psychiatric and medical certainty . . . would that [the effect of being unable to make a causal link] apply to the general patient population who would be exposed to this type of experience?"

THE WITNESS: "It would have been exposed to this type of exploitation . . . ."

COUNSEL FOR THE PLAINTIFF: "Yes."

THE WITNESS: "—in the therapy? Yes, it would."

He also testified:

COUNSEL FOR THE PLAINTIFF: "[B]ased on your experience, could you . . . tell the Court . . . whether you have an opinion as to the circum-

Although the expert testimony is somewhat ambiguous, it could fairly be interpreted to mean that a reasonable person who had been subjected to the type of ordeal alleged by Riley would not have been able to understand that it caused him harm. The expert further testified that contact with a peer who had been through the same experience might reasonably have enabled Riley to make the causal link he failed to make in therapy with Dr. Oder.

The combined evidence of the affidavits and the expert testimony does not require a ruling that Riley's action was timely. A reasonable fact finder, however, could find that Riley did not make the causal link and that his failure to do so was reasonable. Thus, summary judgment should not have been granted.

We next address the question who, on remand, should decide the disputed issue of fact. Some jurisdictions hold that when the plaintiff knew or should have known that his cause of action existed is a preliminary question to be decided by a trial judge. See *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687 (10th Cir. 1981); *Decker v. Fink*, 47 Md. App. 202 (1980); *Blana v. Spezia*, 155 Mich. App. 348 (1986); *Shillady v. Elliot Community Hosp.*, 114 N.H. 321 (1974); *Lopez v. Swyer*, 62 N.J. 267 (1973). These jurisdictions are perhaps fearful that juries will be reluctant to bar tardy litigants for whom they have sympathy from court on a "technicality."

The majority of jurisdictions holds, however, that factual disputes concerning when a plaintiff knew or should have known of his cause of action are to be resolved by the jury. See *In re Swine Flu Immunization Prods. Liab. Litig.*, 880 F.2d 1439, 1443 (D.C. Cir. 1989); *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir. 1985); *Allen Group Leasing Corp. v. McGugin*, 537 So.

---

stances of Mr. Riley being unable to either be aware of the harm caused him or when that harm was caused and who caused that harm . . . is consistent with your experience?"

THE WITNESS: "Yes it is."

2d 22, 23 (Ala. 1988); *Oakes* v. *McCarthy Co.*, 267 Cal. App. 2d 231, 255 (1968); *DiChellis* v. *Peterson Chiropractice Clinic*, 630 P.2d 103, 106 (Colo. Ct. App. 1981); *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 526-527 (1989); *Florida Patient's Compensation Fund* v. *Tillman*, 487 So. 2d 1032, 1035 (Fla. 1986); *King* v. *Seitzingers, Inc.*, 160 Ga. App. 318, 320 (1981); *Witherell* v. *Weimer*, 85 Ill. 2d 146, 156 (1981); *Hecht* v. *First Nat'l Bank & Trust Co.*, 208 Kan. 84, 93 (1971); *Grondahl* v. *Bulluck*, 318 N.W.2d 240, 243 (Minn. 1982); *Oak Grove Investors* v. *Bell & Gossett Co.*, 668 P.2d 1075, 1079 (Nev. 1983); *Ohler* v. *Tacoma Gen. Hosp.*, 92 Wash. 2d 507, 510 (1979); *Renner* v. *Asli*, 167 W. Va. 532 (1981). Moreover, our own cases show no reluctance to allow a jury to decide factual issues relative to the statute of limitations. See *Davidson* v. *Robie*, 345 Mass. 333 (1963) (date of contract); *LaBonte* v. *New York, N.H. & H.R.R.*, 341 Mass. 127 (1960) (estoppel); *Knight* v. *Lawrence*, 331 Mass. 293 (1954) (same).

The judge is responsible for properly instructing the jury as to the applicable law. If the jury's verdict is against the weight of the evidence, the judge may order a new trial. See *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520-521 (1989). These traditional instruments of jury control should suffice to restrain jury irresponsibility in this arena. Therefore, we conclude that, where, as here, the plaintiff has claimed a trial by jury, any disputed issues relative to the statute of limitations ought to be decided by the jury.

Riley also claims that, because of the nature of his injury he was psychologically and emotionally incapable of bringing an action against Dr. Presnell until his therapy with Dr. Oder had progressed to a certain point. Before then, Riley could not confront Dr. Presnell. We note that, however real the psychological and emotional barriers to confrontation may have been, they cannot toll the statute of limitations when the plaintiff knew or should have known that he has been harmed by the defendant's wrongful conduct. See, e.g., *Olsen* v. *Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 176 (1983) (rejecting argument that statute should be tolled

when plaintiff who contracted asthma from exposure to a dangerous chemical would have felt "awkward" suing parties that had a continuing business relationship with his employer).

Riley next claims that Dr. Presnell should be estopped from asserting the statute of limitations as a defense because of the nature of his misconduct. Riley claims that a side effect of Dr. Presnell's treatment was an emotional paralysis which precluded Riley from bringing suit within the time prescribed by the statute. Riley argues that, because Dr. Presnell was indirectly responsible for Riley's delay in bringing the action he should be estopped from raising the statute of limitations as a defense. However, "[u]nless the defendant[ ] 'made representations [he] knew or should have known would induce the plaintiff to put off bringing suit and . . . the plaintiff did in fact delay in reliance on the representations,' there is no estoppel." *Olsen, supra* at 176, quoting *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 134-135 (1982). In this case, Dr. Presnell made no representations to Riley concerning the litigation. Nor was there any evidence that Dr. Presnell intended by his actions to delay the bringing of this action. Hence, there is no estoppel in this case.

Riley also claims that the statute of limitations ought to be tolled by G. L. c. 260, § 7, as amended through St. 1987, c. 522, § 19. The statute in effect at the time Riley brought this action, and all relevant times prior to that, provided that statutes of limitations be tolled while the person entitled to bring the action is insane.[3] In *Pederson* v. *Time, Inc.*, 404

---

[3]Prior to its amendment in 1987, the statute read: "If the person entitled thereto is a minor, or is *insane* or imprisoned when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed" (emphasis added).

In its present form, the statute reads: "If the person entitled thereto is a minor, or is *incapacitated by reason of mental illness* when a right to bring an action first accrues, the action may be commenced within the time hereinbefore limited after the disability is removed" (emphasis added).

Riley argues that the amended version of the statute applies to his case. Even if "incapacitated by reason of mental illness" is broader than "insane," an issue on which we express no opinion, the amended version of the

Mass. 14, 16 (1989), we defined "insanity" under G. L. c. 260, § 7, as " 'any mental condition which precludes the plaintiff's understanding the nature or effects of his acts' and thus prevents him from comprehending his legal rights." Whether a plaintiff is insane under this standard is a question of fact to be determined by the jury unless there is no genuine dispute as to any material fact. See *Boudreau* v. *Landry*, 404 Mass. 528, 530 (1989), and cases cited. The undisputed evidence before the judge in this case, however, demonstrated that Riley was sane during this period.[4] General Laws c. 260, § 7, therefore, did not toll the statute of limitations.

Finally, Riley claims that the statute ought to be tolled because Dr. Presnell breached a fiduciary duty to Riley by failing to inform him of the improper treatment and its likely effects. There are fiduciary aspects to the psychotherapist-patient relationship. Failure of a psychotherapist to reveal facts relevant to a potential malpractice action will toll the statute of limitations until the plaintiff discovers the cause of action. See *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 106 (1980); G. L. c. 260, § 12 (1988 ed.).[5] However, "a

---

statute does not apply here. When Riley filed his complaint in March, 1985, and Presnell answered in May of that year, the unamended statute was in force. Therefore, the stage of the proceedings governed by the amendment had passed and the statute will not be given retroactive effect. See *Porter* v. *Clerk of the Superior Court*, 368 Mass. 116, 118 (1975).

[4]Riley's own deposition testimony demonstrated that he was at all times capable of understanding the nature or effects of his acts as well as a normal person. Dr. Oder's deposition testimony comported with this. (E.g., "Q.: Have you ever felt in a psychiatric sense that Mr. Riley is insane? A: No"; "Q.: Do you feel that Mr. Riley is someone who doesn't understand the nature or the consequences of his acts? A.: Well, I think he has a limited comprehension of the nature and consequences of his acts, which . . . I think I would say of most people.")

[5]General Laws c. 260, § 12 (1988 ed.), states: "If a person liable to a personal action fraudulently conceals the cause of action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." Breach of a fiduciary duty to reveal facts constitutes fraudulent concealment under this statute. *Stetson* v. *French*, 321 Mass 195, 198-199 (1947).

cause of action is not concealed from one who has knowledge of the facts that create it." *Stetson* v. *French*, 321 Mass. 195, 198 (1947). Once the injured party becomes aware or reasonably should become aware of the existence of the cause of action, the statute begins to run. See *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow*, 203 Mass. 159, 201 (1909). The relevant inquiry, therefore, is identical to the discovery rule discussed above.

Because there was a genuine dispute as to when the plaintiff knew or should have known that he may have been harmed by the defendant's wrongful conduct, summary judgment was improperly granted. We therefore reverse the judgment of the Superior Court and remand this case for further proceedings consistent with this opinion.

*So ordered.*

O'CONNOR, J. (dissenting). "Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations." *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 210 (1990). That principle, generally known as the discovery rule, has sometimes been expressed by the statement that a cause of action does not arise so as to start the statutory limitations period running while the wrong is "inherently unknowable." *Olsen* v. *Bell Tel. Laboratories, Inc.*, 388 Mass. 171, 175 (1983). *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 129 (1982). *Friedman* v. *Jablonski*, 371 Mass. 482, 485 (1976). *Hendrickson* v. *Sears*, 365 Mass. 83, 90 (1974). The clear import of that language is that, when a person with ordinary wisdom and judgment would be able to know that the conduct or product of another may have harmed him or her, the statutory limitations period has begun to run in the absence of an applicable statutory exception (tolling provision). I agree with the court that no such exception obtains in this case.

In other cases, the court has expressed the discovery rule somewhat differently, but nevertheless as imposing an objective test that prescinds from the mental, emotional, or psychological features or characteristics of the individual plaintiff, regardless of how those characteristics may have come about. For example, in *Massachusetts Elec. Co. v. Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 267 (1985), the court, citing *Olsen, supra, White, supra,* and *Hendrickson, supra,* put it that, in determining when a cause of action has accrued for statute of limitations purposes, "we have been concerned with the question whether a plaintiff knew or had reason to know of the existence of the cause of action." In *Franklin* v. *Albert*, 381 Mass. 611, 612 (1980), the court announced that "a cause of action for medical malpractice does not 'accrue' under G. L. c. 260, § 4, until a patient learns, or reasonably should have learned, that he has been harmed as a result of a defendant's conduct." Finally, in *Bowen* v. *Eli Lilly & Co., supra* at 210, we tested the accrual of the plaintiff's cause of action "by what a reasonable person in her position would have known or on inquiry would have discovered at the various relevant times."

According to common usage of the English language, an inquiry concerning whether a plaintiff "had reason to know of the existence of the cause of action," see *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C., supra* at 267, is simply an inquiry about whether there was a rational ground — a logical basis — for the plaintiff to conclude that he or she had a cause of action. Again, according to common English usage, the question whether a plaintiff "reasonably should have learned[] that he has been harmed as a result of the defendant's conduct," see *Franklin* v. *Albert, supra* at 612, asks whether, had the plaintiff exercised sound judgment based on available information, he would have discovered his cause of action. Until now, the test in this Commonwealth for when a cause of action has arisen for statute of limitations purposes has focused on the realities perceptible to persons other than the affected individual, not on the facts as they may be perceived by the affected person. That is to

say, heretofore our discovery rule has invoked an objective, not a subjective, test.

*Bowen* v. *Eli Lilly & Co.*, *supra*, suggests nothing different. *Bowen* did not involve a plaintiff who claimed mental impairment as an obstacle to her discovery of her cause of action. The court considered whether, on the summary judgment record, "a reasonable person *in the position of the plaintiff* would have been on notice that her mother's ingestion of DES may have caused the plaintiff's cancer" (emphasis added). *Id.* at 208. In the context of the facts, the court clearly was not suggesting that, had the plaintiff been mentally impaired by reason of the defendant's conduct or otherwise, that fact would have been one of the circumstances to be taken into account in determining whether the cause of action had accrued. The court's focus was on the information available to the plaintiff, and the court assumed that the plaintiff was a person of sound judgment. Contrary to the court's suggestion, *Bowen* is not authority for the proposition that, apart from statutory tolling provisions, a plaintiff's postincident intellectual deficits may postpone or prevent the running of limitations periods. Furthermore, none of the cases from other jurisdictions cited by the court, *ante* at 247-248, even suggests that a plaintiff's intellectual or psychological deficit is to be considered in determining when a cause of action has arisen for statute of limitations purposes. None of those cases suggests that a discovery rule that is subjective in character fairly accommodates the concerns with which statutes of limitations are designed to deal.

The new rule, as well as the type of cases to which it ultimately will apply, is far from clear. However, it appears that, when an action to which the rule applies is brought after the limitations period, measured from the occurrence of the wrongful injury, has passed, the questions for the jury concerning whether the case was timely brought will be very similar to the questions involved in the determination of liability and damages. The jury will decide what the defendant's conduct was, and then will decide what mental or psychological deficits were caused by that conduct. If the jury

decide, perhaps many years after the relevant events, when evidence has been lost to the defendant or has become so stale as to be unreliable, that the defendant's conduct altered the judgment of the plaintiff in such a way that the plaintiff could not recognize (as a reasonable person would) that he or she may have been harmed thereby, the jury will then proceed to reanswer the same questions, and little more, in assessing liability and damages.

Protracted delay, with its attendant loss and staleness of evidence, results in unfair litigation. A discovery rule that postpones the commencement of the statutory limitations period until the asserted wrong is inherently knowable, an objective standard, usually implicating only a question that is simple to answer,[1] reasonably accommodates the legitimate interests of individuals seeking remedies for their injuries without imposing unfair burdens on defendants. The rule announced today, however, which is largely subjective in operation and requires the resolution of complex factual questions perhaps many years after the occurrence of the events complained of, invites the very injustice and instability that statutes of limitations are designed to prevent.

"Statutes of limitations are 'vital to the welfare of society. . . . They promote repose by giving security and stability to human affairs.' *Franklin* v. *Albert*, [381 Mass. 611, 618 (1980)], quoting *Wood* v. *Carpenter*, 101 U.S. 135, 139 (1879). They also 'encourage plaintiffs to bring actions within prescribed deadlines when evidence is fresh and available.' *Franklin* v. *Albert*, *supra*, citing *United States* v. *Kubrick*, 444 U.S. 111 (1979)." *Olsen* v. *Bell Tel. Laboratories, Inc.*, *supra* at 175. The court's holding, as I see it, "create[s] an unacceptable imbalance between affording plaintiffs a remedy and providing defendants the repose that is essential to human affairs." *Id.*

---

[1]Frequently, the answer to the question whether a wrong is inherently unknowable is sufficiently clear that the court can supply the answer as a matter of law. See, e.g., *Massachusetts Elec. Co.* v. *Fletcher, Tilton & Whipple, P.C.*, *supra* at 268; *Friedman* v. *Jablonski*, *supra* at 90-91.

This action was instituted on March 1, 1985, more than four years after the plaintiff was told by a second physician that he had become addicted to Valium while under the defendant's care and had received substandard treatment from the defendant. By that time, at least, the plaintiff was on reasonable notice that he may have been harmed by the defendant's treatment. The wrong for which he brought this action clearly was not inherently unknowable at that time. No contrary facts were presented in connection with the defendant's motion for summary judgment. There being no other cause for reversal, the motion was correctly allowed and the judgment should be affirmed.