Agnes, A.J.
The plaintiff, Brenda A. Gray (hereinafter “Plaintiff’) brought suit against Johnson & Johnson Medical, a Division of Ethicon, Inc. and numerous co-defendants (hereinafter "Defendants” collectively) alleging negligence and breach of warranty in the production, distribution and sale of natural rubber latex gloves worn by the Plaintiff in the course of her employment as a health care provider. The Defendants moved for summary judgment alleging that the present action is barred by the statute of limitation. Because there are no genuine issues of material fact and the Plaintiff knew or should have known the cause of her injury more than three years prior to filing suit, the Defendants’ motion for summary judgment is ALLOWED.
BACKGROUND
Viewed in a light most favorable to the Plaintiff, the materials submitted on the Defendants’ motion for summary judgment are as follows. The Plaintiff has worked in the health care field since graduating from high school in 1987. She began her career as a Certified Nurse’s Aide and later became a Licensed Practical Nurse. The Plaintiff worked in a number of nursing homes throughout her career and routinely wore natural rubber latex gloves in the course of her nursing duties.
The Plaintiff has a history of allergies to certain animals and environmental substances and as a result suffers such typical allergy symptoms as itchy eyes and wheezing. She became a patient of Allergy & Asthma Specialists (hereinafter “AAS”) in April of 1990. Although the Plaintiff consulted with at least three allergists at AAS, Dr. Bryan Stone was her principal allergist. She did not schedule regular appointments but only visited AAS when she experienced discomfort from allergy symptoms. From 1990 to 1994, the Plaintiff saw AAS allergists on several occasions. Typically, her visits to AAS consisted of the Plaintiff describing her symptoms to a staff nurse or doctor followed by a consultation with a doctor who prescribed a course of treatment.
*10 The Plaintiff visited AAS on August 5, 1993 and told Dr. Stone that her asthma had increased and that she was sneezing frequently at work. No references to the Plaintiffs hands appear in the record of that visit. She returned to AAS on March 24, 1994 and advised Dr. Stone that her allergy symptoms were becoming worse and she experienced shortness of breath and chest tightness while at work. The Plaintiff further advised Dr. Stone that she developed welts on her hands during the day and that she wore powdered latex gloves while at work. She returned to AAS again on April 28, 1994 and Dr. Stone instructed the Plaintiff to switch from latex to vinyl gloves. Thereafter, the Plaintiff “tried to wear [vinyl gloves] as much as [she] could." B. Gray Dep. at 101. The medical records from the April 1994 visit include a notation by Dr. Stone that the Plaintiff should return after the birth of her baby (due in October 1994) to be tested for latex allergy. However, Dr. Stone did not discuss the allergy test with the Plaintiff during that visit.[2] The Plaintiff acknowledges that her hands became red and itchy every time she wore powdered latex gloves between February 1993 and March 1994 and that these symptoms resolved when she switched from latex to vinyl gloves.
The Plaintiff did not return to AAS for nineteen months thereafter. However, during part of that time, the Plaintiff took maternity leave following the birth of her second child and did not work as much as she had in the past. On November 8, 1995, the Plaintiff suffered a serious allergic reaction and experienced swollen and itchy eyes, runny nose and sneezing while wearing Rubbermaid latex gloves at home. The following day another AAS specialist, Dr. Julian Melamed, opined that the Plaintiff may suffer from latex allergy. A blood test confirmed that diagnosis on November 22, 1995.
Summary Judgment Standard
The court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community Nat'l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). “Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ " Cassesso, 390 Mass. at 422 (1983) (citations omitted). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any. witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “[t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ”Anthony's Pier Four v. Crandall Dry Dock Eng’g, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n of Gov’t Employees v. Central Broad. Corp., 379 Mass 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community Nat’l Bank, 369 Mass. at 553; Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp. 410 Mass 805, 809 (1991).
Statute of Limitations
The statute of limitations applicable to tort actions and actions of contract to recover for personal injuries requires filing of the suit within three years after the cause of action accrues. G.L.c. 260, §2A (1992). Prescott v. Morton Intern, Inc., 769 F.Sup. 404, 406 (D.Mass. 1990). The Legislature has not defined when a cause of action accrues, deferring instead to judicial interpretation. Riley v. Presnell, 409 Mass. 239, 243 (1991); Franklin v. Albert, 381 Mass, 611, 617 (1980). Phinney v. Morgan, 39 Mass.App.Ct. 202, 204 (1995). A cause of action accrues when the plaintiff knows or should know that she contracted her symptomology “as a result of conduct of the defendants.” Doucette v. Handy & Harmon, 35 Mass.App.Ct. 724, 725 (1994) quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-06 (1990). The statute of limitations begins to run when a plaintiff has “(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was.” Riley, 409 Mass. at 243; Bowen 408 Mass. at 208. Martinez v. Sherwin-Williams Co., 1998 WL 1182061, at 4 (Mass.Super. Ct.) (Sosman, J.), aff'd 50 Mass.App.Ct. 908 (2000). “When compliance with a statute of limitations is at issue, ‘factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.’ ” Patsos v. First Albany Corp., 433 Mass. 323, 329 (2001), quoting *11 Riley, 409 Mass at 247. Ordinarily, when a plaintiff knew or should have known of her cause of action is a question of fact. Phinney v. Morgan, 39 Mass.App.Ct. 202, 209 (1995), quoting Riley, 409 Mass. at 240.
The test for determining when a plaintiff knew or should have known the cause of her injury is an objective one. Lyons v. Nutt, 2000 WL 1164229, at 2, 12 Mass. L. Rptr. 158 (Mass. Super. Ct.) (Welch, J.). See Riley, 409 Mass. at 252-53 (O’Connor, J. dissenting); Bowen, 408 Mass at 208. Once a plaintiff has notice that she has suffered some harm, she is under a “duty to discover from the legal, scientific and medical communities whether the theory of causation is supportable and whether it supports a legal claim.” Bowen, 408 Mass. at 208. Massachusetts does not require that a plaintiff have probable cause to believe that a defendant caused her injury to begin the statute running. Bowen, 408 Mass. at 209. Notice of the likely cause of harm is sufficient to begin the running of the statute of limitations. Bowen, 408 Mass. at 208, quoting Fidler, 714 F.2d at 199. “ ‘[T]he statute of limitations does not stay in suspense until the full extent, gravity, or permanence’ and consequence of the injury are known.” Beaconsfield Townhouse Condo. Trust v. Zussman, 49 Mass.App.Ct. 757, 762 (2000), rev. denied 432 Mass. 1109 (2000), quoting Gore v. Daniel O’Connell’s Sons, Inc., 17 Mass.App.Ct. 645, 649 (1984). The discovery rule does not require that a plaintiff know or have reason to know that the defendant violated a duty of care, but only that she knew or had reason to know that the defendant caused her harm. Bowen, 408 Mass. at 206. The Plaintiff filed this action on November 5, 1998. Thus, any claim accruing before November 5, 1995 is time-barred.
With regard to the first part of the test, there is no dispute that the Plaintiff s hands became red and itchy every time she wore powdered latex gloves between February 1993 and March 1994. During her August 5, 1993 visit to AAS, she informed Dr. Stone that her asthma had increased recently and that these symptoms subsided at night when she was at home. During her March 24, 1994 visit, the Plaintiff complained of increased symptoms at work and expressed a belief that she was having an allergic reaction to something at work. She also informed Dr. Stone that she developed welts on her hands, that the redness and itchiness on her hands occurred every day she worked, and that the symptoms completely subsided when she switched to vinyl gloves. The increase in symptoms which prompted the Plaintiff to schedule an appointment with her allergist, in addition to the new symptom of welts on her hands, reveal that the Plaintiff knew or should have known that she had been harmed.
The Plaintiff argues that she was without notice that she had been harmed because some of her symptoms resembled those she experienced throughout her lifetime as an allergy sufferer and this prevented her from discovering that she was suffering harm. However, the Plaintiff admits that her wheezing, congestion and runny nose symptoms were increasing, that she suffered shortness of breath and chest tightness at work, and that she had developed welts on her hands when she wore powdered latex gloves. The record contains no evidence that the Plaintiff ever experienced symptoms involving welts on her hands at any other time in her life or in connection with any other allergy symptomology. Because these symptoms differed in severity and nature from other allergy symptoms from which she suffered throughout her life, the Plaintiff knew or should have known that she had been harmed. A plaintiff need not understand the nature of her injury to be charged with notice that she suffered a harm. Olsen v. Bell Tel. Laboratories, Inc., 388 Mass. 171, 175 (1983); Riley, 409 Mass. at 243. Phinney v. Morgan, 39 Mass.App.Ct. 202, 208 (1995); Gore v. Daniel O'Connell's Sons, Inc., 17 Mass.App.Ct. 645, 649 (1984).
The second part of the inquiry requires a determination of when the plaintiff had knowledge or sufficient notice of what caused her harm. “Reasonable notice that a particular product or a particular act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry and starts the running of the statute of limitations.” Riley, 409 Mass. at 251 (O’Connor, J. dissenting), quoting Bowen, 408 Mass. at 210.
The Plaintiff told Dr. Stone during her appointment in March 1994 that she suffered from welts on her hands and that she wore powdered latex gloves while at work. During her April 28, 1994 visit, Dr. Stone instructed the Plaintiff to switch from latex to vinyl gloves. Following this appointment, the Plaintiff wore vinyl gloves at work and testified in her deposition that when she switched to vinyl gloves the welts disappeared and her other allergy symptoms seemed better. Furthermore, the Plaintiff acknowledges that, at that time, she believed she was having an allergic reaction to something in her work environment and admits having a subjective belief that the powdered gloves may have been connected to the welts on her hands. Following her April 1994 appointment with Dr. Stone, the Plaintiff wore vinyl gloves and told her co-workers that she wanted to try them because of the welts she was getting on her hands.
Doucette v. Handy & Harmon, supra, involved a metal shop and jewelry-making teacher at Sandwich Junior-Senior High School who allegedly suffered cadmium poisoning in the course of her work. Doucette, 35 Mass.App.Ct. at 724. Doucette filed suit on February 15, 1984, thus any claim accruing prior to February 15, 1981 was time-barred.[3] Id. The evidence indicated that Doucette, as well as other teachers, filed complaints with school officials in September of 1980 concerning the ventilation system and fumes emitted during the jewelry-making process. Id. at 725. In *12 October 1980, Doucette suffered weight loss, fatigue, memory loss and headaches. Id. She consulted a doctor in December 1980 and underwent testing in January 1981. Id. The Appeals Court held that Doucette’s cause of action was not inherently unknowable prior to February 15, 1981 because she knew that her symptoms were probably linked to the fumes she breathed in her classes. Id. at 726.
Similarly, the cause of the Plaintiffs welts and increasingly severe allergy symptoms were not inherently unknowable in March 1994, when she believed the gloves “may have been” connected to the welts on her hands. B. Gray Dep. at 91. In any event, the fact that the Plaintiffs allergist told her to use vinyl gloves instead of latex in April 1994 and thereafter her allergy symptoms subsided is more than sufficient “to put the [P]laintiff on notice that someone may have caused her injury.” Martinez v. Sherwin-Williams Co., 1998 WL 1182061, at 5 (Mass. Super. Ct.) (Sosman, J.) (emphasis in original), quoting Bowen, 408 Mass. at 207. That the Plaintiff thought the gloves “may” have been connected is sufficient to charge her with notice of the cause of her harm. Sufficient notice as to causation requires neither absolute certainty nor even firm conviction. Fidler, 714 F.2d at 199-200. Martinez v. Sherwin-Williams Co., 1998 WL 1182061, at 5 (Mass. Super. Ct.) (Sosman, J.). The Plaintiffs personal belief that there was a connection between the gloves she wore at work and the welts on her hands suffices to begin the statute running.
This case is unlike one in which the nature of the injury may have impeded the Plaintiffs ability to discover the cause of her injury. See, e.g., Riley, 41 Mass.App.Ct. at 246 (therapist’s improper sexual relationship with plaintiff “causeld] an injury which by its very nature prevents the discovery of its cause”); Palermo v. Brennan, 41 Mass.App.Ct. 503 (1996) (same); Simmons v. United States, 805 F.2d 1363, 1367 (9th Cir. 1986) (same). Nor is this a case where the Plaintiff faced a series of differing or conflicting medical opinions as to causation such that a prudent person would be left with uncertainty as to which of several causes were responsible. Lindsay v. Romano, 427 Mass. 771 (1998) (genuine dispute as to whether surgeon’s malpractice was discoverable by plaintiff where surgeon and subsequent treating physicians could not explain plaintiffs symptoms). Nothing about the nature of the Plaintiffs illness prevented her from discovering the cause, nor was its cause medically inexplicable. Both the Plaintiff and the physicians who treated her at AAS readily suspected that powdered latex gloves played a role in her escalating symptomology.
Based on the forgoing undisputed facts, the court holds that the Plaintiffs cause of action accrued on a date no later than April 28, 1994. Therefore, the present action, filed November 5, 1998, is barred by G.L.c. 260, §2A.
ORDER
It is therefore ORDERED that the Defendants’ summary judgment motion be ALLOWED.

 Dr. Stone testified at his deposition that he believed he would have discussed latex allergy with the Plaintiff during this visit. However, the court assumes the Plaintiffs testimony is correct for purposes of this motion.

 The three-year statute of limitations imposed by G.L.c. 260, §2A also governed the Doucette case.