Cratsley, J.
INTRODUCTION
Rhoda Salemme (the “plaintiff’) brought this products liability action on May 28,1999, seeking damages for Type I latex allergies allegedly developed and suffered as a result of wearing and/or being exposed to latex gloves manufactured, designed, distributed and/or sold by the defendants. Victor Salemme, the plaintiffs husband, seeks damages for loss of consortium.[3] Pursuant to Mass.R.Civ.P. 56(c), the defendants now move for summary judgment on the grounds that the plaintiffs’ claims are barred by the relevant three-year statute of limitations. G.L.c. 260, 2A. The plaintiff opposes the motion, arguing that the statute of limitations was tolled until she was diagnosed with latex allergies in June of 1996. She asserts that this lawsuit, filed in May 28, 1999, is, thus, timely. For the reasons that follow, the defendants’ motion is DENIED.
FACTUAL BACKGROUND
All of the following facts are taken from the summary judgment record, consisting of affidavits, deposition testimony, answers to interrogatories and medical records.

1. The Plainttiff’s EmploymentExposure to Latex

The plaintiff worked in various dental offices as a receptionist and then as a dental assistant between 1981 and 1996. In those dental offices, employees wore latex gloves, changing them between fifteen and thirty times per day. The plaintiff wore latex gloves at work beginning between 1984 and 1988 and continuing until 1992 when she switched to vinyl gloves. In 1991, before switching to vinyl gloves, she began wearing cotton liners underneath the latex gloves.

*420
2.Dr. Von Weiss

The plaintiff suffered from eczema on her hands since her childhood. The severity of the eczema often fluctuated seasonally. In 1988, while accompanying her son to a dermatologist appointment, the plaintiff showed her hands to Dr. Von Weiss. He prescribed a cream to treat the eczema and recommended that she return in two weeks. Although he has no independent recollection of the visit, the medical records indicate that Dr. Van Weiss provided an instructional sheet on eczema which advised, inter alia, that “when rubber gloves are used, white cotton gloves should be worn inside the rubber gloves,” and stated “that some people are allergic to rubber . . . Heavy duly vinyl dermatological gloves that will not cause more rash can be ordered.” The plaintiff has no recollection of receiving this instruction sheet. The medical records also indicate that Dr. Van Weiss had a “discussion of gloves” with the plaintiff and that her eczema was “worse in last few months, this may be due to the problem of wearing latex gloves.” At his deposition, Dr. Van Weiss indicated that a “discussion of gloves” would have included explaining to the plaintiff the symptoms and conditions of latex allergy. However, Dr. Van Weiss also testified that he diagnosed her condition as eczemanot latex allergy.

3.The Cotton Liners and Switch to Vinyl Gloves

In 1991 the plaintiff began wearing cotton liners underneath the latex gloves. According to her deposition testimony, she began wearing cotton liners because of the ointment she was using to treat her eczema. She testified that she did not experience any symptoms other than her normal eczema. However, a medical report prepared by Dr. Kales in 1998 for the Department of Industrial Accidents after an impartial physical examination states that “she began using cotton liners under latex gloves because of worsening eczema and probable contact dermatitis and/or hives.” The plaintiff testified that she switched to vinyl gloves because the cotton liners resulted in a tight fit which irritated her hands and was annoying. Dr. Kales’ report, however, indicates that she switched to vinyl because her “eczema and probable contact dermatitis and/or hives” had worsened.

4.The Yankee Dental Conferences

Each year during her employment, the plaintiff was permitted to attend the Yankee Dental Conference in Boston and to attend whatever seminars appealed to her. At the 1993, 1994, 1995 and 1996 conferences, seminars and presentations were offered concerning hand and nail problems caused by rubber gloves. The 1996 conference, which was held between January 25-28, included a seminar for dentists on allergic reactions in the office and had a “special emphasis [on] treating allergic emergencies . . . and to latex allergy.” The plaintiff did not attend any of these seminars, instead choosing others at more convenient times.

5.Allergic Symptoms Emerge & Worsen: Troubleshooting and Diagnosis

In the early 1990s the plaintiff began experiencing seasonal hay fever symptoms including runny nose, itchy nose, and occasional breathing difficulties. By 1995, the plaintiff experienced more serious symptoms including runny eyes and nose, uncontrollable sneezing, coughing, headaches, nausea, hives, wheezing and shortness of breath while at work. Her symptoms were worse while she was at work than while she was at home. As part of her efforts to discover the cause of her allergies, the plaintiff consulted with her general practitioner, Dr. Pransky. At a March 1995 appointment, she explained her symptoms. Dr. Pransky considered the ventilation system at her work a possible cause of the allergies and recommended that she consult an allergist.
At the dental office where she worked, the plaintiffs employer had concluded that there was something in the work environment causing her symptoms. He began “troubleshooting” the problem by altering conditions at the workplace. Specifically, he had the rugs and ventilation system professionally cleaned and he cut down a tree outside of his office. These efforts did not eliminate her symptoms. In August of 1995, the plaintiff returned to Dr. Pransky and stated her belief that the source of her allergies must have been something at the workplace because her symptoms subsided when she was away from the office. Dr. Pranksy referred her to an allergist, Dr. Sakowitz.
On August 29, 1995, the plaintiff consulted with Dr. Sakowitz. He took an extensive medical history and conducted a skin prick test which was positive for allergies to weeds, dust, dog, feathers, plantain and mites. He told her that she was likely responding to something at her work environment and that she should try and determine what it was and avoid/eliminate it. Dr. Sakowitz considered the air conditioning and ventilation system or possibly sick building syndrome at her workplace as possible culprits. He diagnosed her with perennial allergic rhinitis and asthma and advised her to get allergy shots with Dr. Pransky and return in one year.
The plaintiffs symptoms did not improve. In response to Dr. Sakowitz’s request, on January 19, 1996, the plaintiff compiled and provided to Dr. Sakowitz a list of potential allergens and chemicals that she was exposed to at work. Among several others, the plaintiff listed latex. During or about June 1996, the plaintiff saw a television program which discussed latex allergy. Believing that this may be the source of her problems, she discussed it with Dr. Pransky on June 12, 1996, and requested that she be tested for latex allergy. Dr. Pranksy then took a blood sample and performed a RAST test for latex allergy. A short time thereafter in June of 1996, Dr. Pransky’s office notified her that she tested high positive for latex allergy.
*421 DISCUSSION

1.Standard

Summary judgment will be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material facts and that the moving parly is entitled to judgment as a matter of law.” Mass.R.Civ.P.56(c). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “A plaintiff who invokes the discovery rule by claiming that her delay in filing suit stems from'a failure to recognize the cause of her injuries bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge.” Doe v. Creighton, 439 Mass. 281, 284 (2003); Lindsey v. Romano, 427 Mass. 771, 773-74 (1998). This question is “one of fact which in most instances will be decided by the trier of fact.” Riley v. Presnell, 409 Mass. 239, 240 (1991).
Because the plaintiff bears the burden of proof on the discovery rule, “to survive the defendant’s motion for summary judgment the plaintiff must demonstrate a reasonable expectation of proving that her suit was timely filed.” Doe, 439 Mass. at 284. In determining whether the plaintiff has met this burden, the court will view the evidence produced and draw all reasonable inferences in a light most favorable to the plaintiff. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997).

2.Issues for Summary Judgment

The defendants argue that the applicable three-year statute of limitations bars the plaintiffs claims. This action was filed on May 28, 1999. Therefore, the critical date for “accrual” of her cause of action is May 28, 1996. The defendants argue that on or before that date the plaintiff knew or reasonably should have known that she suffered from allergies and that exposure to latex was the cause of those allergies. The plaintiff argues that the discovery rule saves her claims, because she could not have reasonably have known that latex was the cause of her allergies until she was positively diagnosed with a latex allergy in late June of 1996. This date is within three years of the filing date of this complaint.

3.The Discovery Rule in Massachusetts

Where injury is apparent but its cause is unknown, Massachusetts applies the “discovery rule” to determine “when [the] cause of action accrues and triggers the beginning of the statutory period.” Mohr v. Commonwealth, 421 Mass. 147, 156 (1995). “[A]ccrual of the cause of action is held to be in abeyance until the time when a modicum of knowledge supplants ignorance in the mind of the claimant, or may be reasonably imputed to her.” Lijol v. MBTA, 28 Mass.App.Ct. 926, 928 (1990). The critical date is “when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant’s conduct.” Mohr, 421 Mass. at 156, quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990).[4] The test is an objective one: “Only if a reasonable person in the plaintiffs position would have been able to discern the harm or the cause of the harm will the cause of action accrue and the limitations period begin to run.” Riley v. Presnell, 409 Mass. 239, 245 (1991). In other words, the action accrues when the plaintiff “knew or should reasonably have known that he had contracted [the disease] as a result of conduct of the defendants.” Albrecht v. Clifford, 436 Mass. 706, 713 (2002). Thus, the clock will not start ticking until the plaintiff has “(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was.” Bowen, 408 Mass. at 205.
Our appellate courts have clarified that the objective test must take into account the specific facts and circumstances of the plaintiff and the information known to her. E.g., Lindsey v. Romano, 427 Mass. 771, 774 (1998), quoting McGuinness v. Cotter, 412 Mass. 617, 620 (1992) (“In determining whether a party has sufficient notice of causation, our inquiry is whether, based on the information available to the plaintiff, a reasonably prudent person in the plaintiffs position should have discovered the cause of his or her injuries” (emphasis added)); Riley, 409 Mass. at 245; Bowen, 408 Mass. at 208-09 (“whether a reasonable person in the position of the plaintiff would have been on notice . . . depends on the facts”); Castillo v. Mass. Gen. Hosp., 38 Mass.App.Ct. 513, 516 (1995), quoting Malapanis v. Shirazi, 21 Mass.App.Ct. 378, 383 (1986) (“a limitations period commences to run when a reasonably prudent person (in the tort claimant’s position), reacting to any suspicious circumstances of which he might have been aware ..., should have discovered that he had been harmed”). See also Gore, 17 Mass.App.Ct. at 647 & n.3 (as amatter of law, plaintiff on notice of cause of injury upon first positive diagnosis linking injury to defendant’s conduct); Zamboni v. Aladan Corp., 304 F.Sup.2d 218, 225-26 (D.Mass. 2004) (and cases cited) (where initial diagnosis did not implicate the defendant, knowledge of causation not imputed to plaintiff until subsequent diagnosis implicating the defendant).
In addition “the decision whether any [injury] should reasonably have been uncovered ha[s] to be made in light of what reasonable inquiry would have disclosed.” Cambridge Plating Co., Inc. v. NAPCO, Inc., 991 F.2d 21, 27 (1st Cir. 1993), quoting Bowen, 408 Mass. at 206 “As soon as one is on notice of an injury, or at least one that may have been caused by a third party, one must act reasonably in considering and investigating this possibility.” Bernier v. The Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998). “Accrual of the plaintiffs cause of action is tested, therefore, by ‘what a reasonable person in her position would have known or on inquiry would have discovered at the various relevant times.’ ” Cambridge Plating Co., 991 F.2d at *422 27, quoting Bowen, 408 Mass. at 210. “The statute of limitations will begin to run once the plaintiff has enough information,” or should have had enough information after reasonable inquiiy “to target the defendant as a suspect, though not necessarily to identify the defendant as the culprit.” Id. at 30. In other words, although certainty is not required, notice of “likely cause” is sufficient to start the running of the statute of limitations. Bowen, 408 Mass. at 207-08.
4. The Discovery Rule Applied to the Circumstances of This Case
There is a genuine dispute of fact in the record as to whether the plaintiff knew or should have known that the cause of her allergy symptoms was related to latex gloves before May 28, 1996. First, if the defendants prove that the plaintiff wore cotton liners and switched to vinyl gloves because she believed that latex was causing allergy symptoms (hives or otherwise) in 1992, then a jury would be warranted in concluding that her claims are time-barred. See Gray v. Johnson & Johnson Medical, 14 Mass. L. Rptr. 9 (2001) (Agnes, J.).[5] Specifically, if proved, a finder of fact could conclude that, as a result of her consultation with Dr. Van Weiss, the plaintiff should have been aware that latex gloves were associated with allergic reactions. If, however, a juiy believes the plaintiffs versionthat she received treatment only for her lifelong condition of eczema and switched gloves to accommodate treatment of her eczemathen it would be warranted in finding that the claims are not time-barred.[6]
With respect to the latex allergy symptoms, this Court cannot say as a matter of law that the plaintiff should have discovered the cause of those symptoms on or before May 28, 1996. As of August 1995, the evidence establishes that the plaintiff believed something in her office was causing the allergy symptoms. At this point, if not substantially earlier, the plaintiff had a duty of inquiiy to discover the cause of those symptoms. Bowen, 408 Mass. at 206.
If proved, a jury could find that the plaintiffs actions in regularly consulting Dr. Pransky and then Dr. Sakowitz and working with her employer to eliminate potential allergens from the worksite were reasonablealbeit unsuccessfulefforts to discover the source of her allergies. A jury would be warranted, on the evidence currently in the summary judgment record before this Court, in concluding that it was reasonable for her not to have discovered the cause of her injuries until she saw the television program and had the RAST test performed, both events occurring after the critical date of May 28, 1996. Importantly, the plaintiff ceased wearing latex gloves in 1992, yet her conditions continued to worsen through 1995.[7] Thus, a juiy could conclude that the plaintiffs failure to discover that latex gloves were still causing her symptoms was not unreasonable.
On the other hand, a juiy could also reasonably find, if the evidence at trial confirmed it, that the plaintiffs efforts to discover the cause of her symptoms were unreasonable in light of the information reasonably available to her (the Yankee Conference and the information provided by Dr. Van Weiss) and that she should have discovered the source of allergies before May 28, 1996. On the record before the Court, however, this is a fact question properly suited for a juiy. See Riley, 427 Mass. at 773-74; Cambridge Plating Co., 991 F.2d at 29-31.
The defendants rely heavily on two cases concerning latex allergies and the discoveiy rule; Gray v. Johnson & Johnson Med., 14 Mass. L. Rptr. 9 (October 23, 2001) (Agnes, J.), and Starer v. Baxter Healthcare Corp., 2003 U.S.Dist. LEXIS 13928 (D.Mass.) (Saris, J.). However, both cases are distinguishable. In Gray, the plaintiff had visited her doctor complaining of welts on her hands and other allergic symptoms she experienced at work which were different than those she otherwise regularly experienced. Her doctor advised her to switch to vinyl gloves. The symptoms subsided when she wore vinyl instead of latex. The Court held that (1) she was on notice that she had been harmed because her symptoms at work were different than those she had experienced regularly, and (2) she should have known the cause of the symptoms where she subjectively believed the latex gloves were responsible for her symptoms and the symptoms subsided when she did not wear the gloves. 14 Mass. L. Rptr. at 11-12. Likewise, in Starer, the plaintiff had suffered allergic reactions to latex for several years before being officially diagnosed with latex allergy. During that time she believed that her allergy symptoms were related to latex gloves, and recognized that she suffered symptoms when exposed to latex. Thus, the Court held that where the plaintiff had notice that latex was the likely cause of her allergies well before the critical date, her claim was time-barred. Starer, 2003 U.S.Dist. LEXIS 13928, *7-*10. This case is distinguishable because, as noted above, a juiy could find that the plaintiffs allergies did not improve when she stopped wearing latex and that she did not believe or have reason to believe that latex was causing her condition before June of 1996.
One final observation: Whether a plaintiff exercised reasonable diligence in investigating his/her injuries and whether, based on the information reasonably available, a plaintiff should have known the cause of the injuiy typically “involves a decisional process fraught with resolution of factual issues.” Castillo, 38 Mass.App.Ct. at 516; Riley, 409 Mass. at 240. The factual record before the Court does not establish, as a matter of law, that the plaintiff knew or should have known that the cause of her symptoms was latex gloves on or before May 28, 1996. Therefore, the Motion for Summary Judgment is DENIED.
ORDER
For the reasons stated above, it is hereby ORDERED that the defendants’ Motion for Summary Judgment is DENIED.

Victor Salemme’s claim is entirely derivative on Rhoda Salemme’s claim. For purposes of this decision, the Court will refer to “the plaintiff’ as Rhoda Salemme, as the outcome of her claims control Victor Salemme’s claims.

The critical time may also be characterized as the point when the harm or cause thereof is no longer “inherently unknowable.” The standards are the same and can be used interchangeably. Albrecht v. Clifford, 436 Mass. 706, 714 (2002), quoting Williams v. Ely, 423 Mass. 467, 473 n. 7 (1996). See also Melrose Hous. Auth. v. N.H. Ins. Co., 402 Mass. 27 (1988) (discovery rule tolls statute of limitations until the harm and its cause cease to be inherently unknowable by reasonable inquiry).

There is a genuine dispute apparent in the record as to which symptoms the plaintiff suffered before switching to cotton liners and vinyl gloveswhether it was just eczema or eczema and hives.

The plaintiff consistently makes a critical distinction between eczema and Type I latex allergy. She maintains that her current claim is unrelated to symptoms associated with eczema. Specifically, the plaintiff states that her claim “is that she incurred a permanent condition of latex allergy Type I as a result of exposure to the defendants’ latex gloves . . . not . . . that the defendants caused her to incur hand eczema and/or dermatitis.’’ Plaintiffs Memorandum in Opposition to the Motion for Summary Judgment, p. 5. Any of tíre plaintiffs claims which are based on her hand irritation (eczema or dermatitis) are, as a matter of law, time-barred.

This lawsuit alleges that her allergies are due to a reaction to chemical and/or powder agents contained in latex gloves.