**Linda F. MURPHY, Plaintiff,**

v.

**AERO–MED, LTD., et al., Defendants.**

**No. CIV.A. 98–40100–NMG.**

United States District Court,
D. Massachusetts.

Oct. 21, 2004.

---

Heather V. Baer, Sally & Fitch, Boston, MA, Jeniffer A.P. Carson, Governo Law Firm, LLC, Boston, MA, Peter M. Durney, Cornell & Gollub, Boston, MA, Daniel P. Griffin, Governo Law Firm LLC, Boston, MA, A. Mei–Ling Huang, Sally & Fitch, Boston, MA, Patricia A. Hartnett, Cornell & Gollub, Boston, MA, Fred A. Kelly, Jr., Nixon Peabody, LLP, Boston, MA, Karineh Kharhatourian, Nixon Peabody, LLP, Boston, MA, Jason C. Kravitz, Nixon Peabody, LLP, Boston, MA, Kimberly A. Lapworth, Segal, McCambridge, Singer & Mahoney, Ltd., Philadelphia, PA, Lee S. MacPhee, Morrison Mahoney LLP, Boston, MA, Christopher P. Morrison, Smith, Stratton, Wise, Heher & Brennan, LLP, Princeton, NJ, Christine L. Nici, Smith, Stratton, Wise, Heher & Brennan, LLP, Princeton, NJ, Andrea Peraner–Sweet, Sally & Fitch, Boston, MA, Judith A. Perritano, Pierce, Davis & Perritano, LLP, Boston, MA, Joel F. Pierce, Pierce, Davis & Perritano, LLP, Boston, MA, Francis J. Sally, Sally & Fitch, Boston, MA, James Q. Shirley, Sheehan, Phinney, Bass & Green, Manchester, NH, Walter H. Swayze, III, Segal, McCambridge, Singer & Mahoney, Ltd., Philadelphia, PA, Gerald D. Wixted, Smith, Stratton, Wise, Heher &

Brennan, LLP, Princeton, NJ, for defendants.

Timothy O. Egan, Peabody & Arnold LLP, Boston, MA, Robert J. Doyle, Steinberg, Doyle, Boston, MA, David M. Governo, Governo Law Firm LLC, Boston, MA, Ernest F. Koschineg, Kent & McBride, P.C., Philadelphia, PA, Michael D. Riseberg, Adler, Pollock & Sheehan P.C., Boston, MA, Carol R. Steinberg, Steinberg, Doyle, Boston, MA, Albert P. Zabin, Duane Morris, LLP., Boston, MA, for plaintiff.

### MEMORANDUM & ORDER

GORTON, District Judge.

Plaintiff Linda Murphy ("Murphy") filed this diversity action against Aero–Med on February 17, 1998, alleging negligence, breach of warranty and violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A") in connection with a latex allergy which she allegedly contracted as a result of using latex gloves manufactured and/or distributed by defendants. Before the Court are defendants' motions for summary judgment.

### I. *Background*

#### A. *Factual background*

The following facts are set forth as alleged in the memoranda in support of the motions for summary judgment and the opposition thereto. Because this matter is before the Court on defendants' motions for summary judgment, facts are viewed in the light most favorable to the plaintiff. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993).

In or around May, 1992, Murphy began working for the American Red Cross ("ARC") in Dedham, Massachusetts, as a phlebotomist. Her job responsibilities included taking blood donations at blood drives and record keeping. When taking blood, Murphy wore latex gloves manufactured by Delta and Aero–Med, which were labeled "hypoallergenic."

In May, 1993, Murphy began sneezing and experiencing itchy eyes while at work. She was allergic to cats and pollen and had experienced similar symptoms when exposed to those allergens, so she thought her symptoms were manifestations of her preexisting allergies compounded by powder in the latex gloves. Murphy's hands also began burning, itching, oozing and breaking out.

In late 1993, Murphy talked with Joyce Hale ("Hale"), her supervisor, about her symptoms. Hale provided cotton glove liners for Murphy but they did not provide satisfactory relief. On December 23, 1993, Murphy wrote a note to Hale as follows:

> Forgot to talk to you about getting powder-free gloves. Had another allergic reaction behind bed 2. Rash, sneezing, itchy watery eyes etc... Please let me know if I need a doctors note? I'm size small.

On January 11, 1994, Murphy wrote another note to Ms. Hale, with the subject line reading "allergic reaction to powder gloves," and again requested that Hale provide powder free gloves for her use. On January 26, 1994, Murphy wrote a third note to Hale:

> My R hand middle finger has an open sore on it from the new gloves (powder free Aromed [sic])—The new gloves helped in stopping some of the allergy with itchy eyes, sneezing, runny nose, and nose bleeds. However I'm now experiencing itching, burning and open sores on my hands.

Murphy wrote still another note to Hale on February 15, 1994, with a subject line "allergies to Aromed gloves and products," noting that her symptoms were "becoming

unbearable" and were "definitely an allergy to the gloves."

·Murphy was told that because of the expense, ARC could order powder-free latex gloves only with a note from a doctor. On February 17, 1994, Murphy saw Dr. Vom Eigen ("Dr.Eigen"), her primary care physician, and obtained a prescription for Delta powder-free latex gloves. Murphy stated at her deposition that she does not recall how long she met with Dr. Eigen, whether she talked with him about her allergies, whether he examined or did any testing on her or whether he expressed any concern regarding her symptoms.

Murphy's symptoms did not improve with powder-free latex gloves and, on March 23, 1995, she saw Dr. DuBuske ("Dr.DuBuske"). Dr. DuBuske advised her that she might have latex allergy and conducted a RAST blood test for latex allergy. On April 6, 1995, Dr. DuBuske informed Murphy by letter that she was allergic to latex.

### B. *Procedural history*

Murphy filed a complaint against Aero–Med on February 17, 1998. She amended her complaint in May, 2001, adding a Chapter 93A claim. On June 9, 1998, Aero–Med made a third-party claim (in the pending action) for contribution and indemnity against Malaytex USA, Inc., Regaltex International, Inc., Alpine Gloves, Inc., Tillotson Healthcare Corp. and Delta Hospital Supply, Inc., manufacturers and/or distributors of the latex gloves at issue in this case. Delta Hospital Supply subsequently filed a third-party claim of its own against Safeskin Corporation. Tillotson was dismissed by a Bright–Line Dismissal of the Multi–District Litigation Court on July 8, 1999.

On April 15, 2004, Defendant Malaytex USA, Inc. filed a motion for summary judgment on behalf of all defendants, claiming that plaintiff's claims are both time-barred and preempted by federal law. Defendant Regaltex filed a separate motion for summary judgment.

## II. *Leave to supplement*

On April 21, 2004, Defendant Aero–Med filed a motion for leave to file a supplement to defendants' motion for summary judgment. The supplement addresses plaintiff's Chapter 93A claims which plaintiff added in her amended complaint. The motion will be allowed and the Court will consider the arguments raised in the accompanying supplement.

## III. *Statute of limitations*

### A. *Standard of review*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st·Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A *genuine* issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts show-

ing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. *Discussion*

Claims of negligence and breach of warranty must be commenced within three years after the cause of action accrues. M.G.L. c. 260 § 2A and M.G.L. c. 106 § 2–318. Chapter 93A claims must be brought within four years after the cause of action accrues. M.G.L. c. 106 § 5A. The Massachusetts legislature has not defined when a cause of action accrues for purposes of the statute of limitations, leaving it a matter of judicial interpretation.

■ As a general rule, a cause of action accrues at the time the plaintiff is injured. *Riley v. Presnell,* 409 Mass. 239, 243, 565 N.E.2d 780 (1991). However, when the action is based on an "inherently unknowable" wrong, the discovery rule applies to toll the statute of limitations for a limited period of time. *Bowen v. Eli Lilly,* 408 Mass. 204, 205, 557 N.E.2d 739 (1990). The discovery rule has been applied to products liability actions brought under negligence and breach of warranty theories. *Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 197 (1st Cir.1983). Under the discovery rule, a cause of action accrues when the plaintiff has "(1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was." *Bowen,* 408

Mass. at 208, 557 N.E.2d 739. Thus, the "crucial date" is "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct." *Id.* at 205–06, 557 N.E.2d 739.

■ In determining whether a person has the requisite knowledge or notice for the statute of limitations to begin to run, courts use a reasonable person standard. *Riley,* 409 Mass. at 245, 565 N.E.2d 780. Courts inquire "whether, based on the information available to the plaintiff, a reasonably prudent person in the plaintiff's position should have discovered the cause of his or her injuries." *McGuinness v. Cotter,* 412 Mass. 617, 628, 591 N.E.2d 659. Thus, the statute of limitations begins to run when the plaintiff should have known that someone may have caused her injuries; it is not required that the plaintiff subjectively know that she may have a cause of action against the defendant. *Riley,* 409 Mass. at 245, 565 N.E.2d 780.

■ The plaintiff need not know the full extent of her injury or have identified the particular ingredient that caused her symptoms for the statute of limitations to begin running. *Olsen v. Bell Telephone Laboratories,* 388 Mass. 171, 175, 445 N.E.2d 609 (1983); *Doucette v. Handy & Harmon,* 35 Mass.App.Ct. 724, 625 N.E.2d 571 (1994). Once a potential plaintiff is on notice of the likely cause of her injury, she "has the duty to discover from the legal, scientific and medical communities whether the theory of causation is supportable and whether it supports a legal claim." *Fidler v. Eastman Kodak Co.,* 714 F.2d 192, 199 (1st Cir.1983).

■ When a defendant raises the statute of limitations as a defense, the plaintiff bears the burden of showing that the case was timely filed. *Riley,* 409

Mass. at 243–44, 565 N.E.2d 780. Thus, in order for this case to survive summary judgment, Murphy must prove that her negligence and breach of warranty causes of action did not accrue before February 17, 1995, and that her Chapter 93A cause of action did not accrue before February 17, 1994. The issue of when a cause of action accrues is a question of fact which, ordinarily, must be decided by a trier of fact. *Riley,* 409 Mass. at 245, 565 N.E.2d 780. Summary judgment may, nevertheless, be appropriate in cases where there is no legitimate factual dispute regarding when the cause of action accrued.

■ From the record, it is clear that Murphy was on notice of her injuries and the fact that they were likely caused by her exposure to latex gloves in December of 1993. Although her itchy eyes and sneezing could be attributed to her preexisting allergies, the open sores on her hands could not. A reasonable person in Murphy's position would have been aware that she may have a cause of action relating her reactions, and this is sufficient to start the statute of limitations running.

Further, Murphy subjectively was aware in December, 1993 that the gloves were causing her to have an allergic reaction. The notes she wrote to her supervisor demonstrate that she believed she was allergic to the powder on the latex gloves. Although her belief turned out to be misdirected, she cannot hide behind her failure to investigate the cause of her symptoms. Murphy knew that she may have a claim relating to the gloves as early as December, 1993. Because this action was not commenced until February, 1998, four years and two months later, all of her claims are barred by the statute of limitations.

Murphy asserts that she sought medical treatment and advice to identify the cause of her symptoms and that her physician did not diagnose the cause of her problem. However, she has not provided any evidence to show that she consulted a doctor regarding the cause of her symptoms before March, 1995. The only doctor visit of which she has made this Court aware is a February, 1994 visit to a family doctor and Murphy does not claim that she inquired about or discussed her symptoms or possible causes with him, only that she requested a prescription for powder-free latex gloves. This is not a case where the plaintiff repeatedly sought medical advice and multiple doctors were unable to diagnose the problem. *See Lindsay v. Romano,* 427 Mass. 771, 696 N.E.2d 520 (1998). Instead, Murphy "essentially did nothing to investigate the cause of [her] injury." *Id.* at 775, 696 N.E.2d 520 n. 4.

Murphy claims that she was not aware of the existence of latex allergies until shortly before Dr. DuBuske gave her the RAST test. Even assuming this to be true, there is no evidence that Murphy's latex allergy was unknowable before her visit to Dr. DuBuske in 1995. The existence of latex allergies was certainly not unknown to the medical community in 1993. *See Starer v. Baxter Healthcare Corp.,* 2003 WL 21918885 at *3 (D.Mass. Aug.12, 2003) ("the medical community was aware of the existence of latex sensitivity as early as 1988"). Murphy's subjective unawareness of the phenomenon of allergy to latex will not toll the statute of limitations.

■ Murphy further claims that the statute of limitations was tolled because defendants labeled the gloves "hypoallergenic" and thus fraudulently concealed the fact that their gloves could cause latex allergy. This claim also fails. Estoppel will not toll the statute of limitations unless the defendants made representations that they knew or should have known would induce the plaintiff to put off bring-

ing suit and the plaintiff did, in fact, delay in reliance on the representations. *Olsen,* 388 Mass. at 176, 445 N.E.2d 609. The "hypoallergenic" label was not intended to dissuade potential plaintiffs from bringing suit against the glove manufacturer, and there is no evidence that the labeling was fraudulent. Thus, estoppel will not toll the statute of limitations in this case.

Other Massachusetts courts have found summary judgment to be appropriate in cases where plaintiffs could be charged with notice of their latex allergies outside of the statutory limitations period. *See Zamboni v. Aladan Corp.,* 304 F.Supp.2d 218 (D.Mass.2004)(holding that cause of action against latex glove manufacturers accrued when plaintiff first suspected a latex allergy); *Starer v. Baxter Healthcare Corp.,* 2003 WL 21918885 (D.Mass. Aug.12, 2003)(holding that cause of action accrued before formal diagnosis of latex allergy when plaintiff had previously suspected that she might be allergic to latex); *Gray v. Johnson & Johnson Medical,* 2001 WL 1319542 (Mass.Super.Ct. Oct. 23, 2001) (holding that cause of action accrued no later than date plaintiff's physician advised her to switch from vinyl to latex gloves, even though physician did not then discuss latex allergy with her).

In *Gray v. Johnson & Johnson,* the court rejected plaintiff's claim that because she had a history of allergies, she was without notice of the harm caused by latex gloves because some of her symptoms resembled those she had experienced with her preexisting allergies. *Id.* The court noted that the record was void of evidence that plaintiff had experienced symptoms involving welts on her hands because of her preexisting allergies and stated that because her symptoms differed in severity and nature from other allergy symptoms plaintiff had experienced throughout her life, she knew or should have known at that time that she had been harmed. *Id.* at *4.

The statute of limitations began running on Murphy's claims no later than December of 1993. Accordingly, the claims plaintiff brought in February of 1998 are time-barred, and defendants are entitled to summary judgment on all counts.

### C. *Defendant Regaltex's motion for summary judgment*

Because the motion for summary judgment submitted by Malaytex USA, Inc. on behalf of all defendants disposes of this case with respect to all defendants, Regaltex's motion for summary judgment will be denied as moot.

### ORDER

Based on the foregoing memorandum, the Motion of Malaytex USA, Inc. on behalf of all defendants for Summary Judgment (Docket No. 68) is ALLOWED and the Motion of Defendant Regaltex International, Inc. for Summary Judgment (Docket No. 72) is DENIED as moot.

**So ordered.**